KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
Telephone: (212) 836-8000
Facsimile: (212) 836-8689
Michael B. Solow
Seth J. Kleinman

-and-

70 West Madison Street, Suite 4100
Chicago, IL 60602
Telephone: (312) 583-2300
Facsimile: (312) 583-2360
D. Tyler Nurnberg (*pro hac vice* pending)
Matthew J. Micheli (*pro hac vice* pending)

Proposed Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GSC GROUP, INC., et al.,[1] | ) | Case No. 10-14653 (AJG) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

---

[1] The Debtors along with the last four digits of each Debtors' federal tax identification number are GSC Group, Inc. (6382), GSCP, LLC (6520), GSC Active Partners, Inc. (4896), GSCP (NJ), Inc. (3944), GSCP (NJ) Holdings, L.P. (0940), GSCP (NJ), L.P. (0785), and GSC Secondary Interest Fund, LLC (6477).

**MOTION OF DEBTORS FOR INTERIM AND FINAL ORDERS
(I) AUTHORIZING THE DEBTORS TO UTILIZE CASH COLLATERAL
PURSUANT TO 11 U.S.C. § 363; (II) GRANTING ADEQUATE PROTECTION
TO PREPETITION SECURED PARTIES PURSUANT TO 11 U.S.C.
§§ 361 AND 363; (III) SCHEDULING FINAL HEARING PURSUANT
TO BANKRUPTCY RULE 4001(B); AND (IV) GRANTING RELATED RELIEF**

GSC Group, Inc. ("GSC Group") and certain of its direct or indirect subsidiaries and affiliates (collectively, the "Debtors") hereby file this motion (the "Motion"), for an entry of an interim order in the form attached hereto as Exhibit A (the "Interim Order") and a final order (the "Final Order"), pursuant to section 105, 361, 362 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules") (i) authorizing the Debtors to utilize Cash Collateral (as defined herein), (ii) granting adequate protection to the Prepetition Secured Parties (as defined herein), (iii) scheduling a final hearing (the "Final Hearing") pursuant to Bankruptcy Rule 4001(b) to approve the Interim Order on a final basis, and (iv) granting related relief. In support of this Motion, the Debtors submit the Declaration of Peter R. Frank in Support of Chapter 11 Petitions and First Day Orders (the "Frank Declaration"), filed contemporaneously herewith, and further state as follows:

# CONCISE STATEMENT[2]

1. Pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, the following are the material provisions regarding the proposed use of cash collateral (as defined in Section 363(a) of the Bankruptcy Code (such cash, the "Cash Collateral").[3]

| | |
|---|---|
| **Parties with Interest in Cash Collateral** (Bankr. R. 4001(b)(1)(B)(i)) | Black Diamond Commercial Finance, L.L.C., as Administrative Agent and Collateral Agent (in such capacity, the "Agent") and the lenders from time to time party to the Prepetition Credit Documents (the "Prepetition Lenders" and, together with the Agent, the "Prepetition Secured Parties"). ¶ 4(a). |
| **Use of Cash Collateral** (Bankr. R. 4001(b)(1)(B)(ii); Local R. 4001-2(a)(1)) | The Debtors are authorized to use the Cash Collateral in an amount not to exceed the amounts reflected in the initial budget prepared by the Debtors, in form and substance satisfactory to the Agent and attached to the Interim Order as Exhibit A (as amended, supplemented, extended or otherwise modified from time to time, the "Budget") for the time period set forth therein, but in no event beyond the Termination Date. ¶ 7(a). |
| **Adequate Protection for Prepetition Secured Parties** (Bankr. R. 4001(b)(1)(B)(iv); Local R. 4001-2(a)(4)) | The Prepetition Secured Parties are entitled to adequate protection of their interest in the Prepetition Collateral and the Cash Collateral, in an amount equal to the aggregate diminution in the value of the Prepetition Secured Parties' respective Prepetition Collateral, including, without limitation, any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of the Prepetition Collateral, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (the aggregate amount of such diminution is referred to hereinafter as the "Adequate Protection Obligations"), and the Agent, for the benefit of the Prepetition Secured Parties, will receive the following adequate protection:<br><br>(1) valid, perfected and enforceable continuing replacement security interests and liens (the "Adequate Protection Liens") in and upon all prepetition and postpetition assets and properties of any kind whatsoever, including but not limited |

---

[2] All capitalized terms used in the Concise Statement but not defined therein shall have the definition ascribed to such terms in the subsequent sections of the Motion or in the Interim Order. The paragraph numbers referenced in the Concise Statement correspond with the relevant paragraph numbers in the Interim Order.

[3] To the extent anything in this summary is inconsistent with the Interim Order annexed hereto, the Interim Order shall control.

to the Prepetition Collateral and the Cash Collateral (such Collateral, the "Replacement Collateral") and including, subject to entry of the Final Order, chapter 5 avoidance actions; provided, however that the Adequate Protection Liens shall be subordinate to the Carve-Out;

(2) a superpriority claim over all administrative expense claims and unsecured claims against the Debtors, now existing or hereafter arising of any kind or nature whatsoever, as provided for in section 507(b) of the Bankruptcy Code (the "Adequate Protection Claim"); provided, however that the Adequate Protection Claim shall be subordinate to the Carve-Out;

(3) current cash payments from the Debtors of all fees and expenses payable to the Agent under the Prepetition Credit Documents, including but not limited to, the reasonable fees and expenses of counsel for the Agent, in each case as provided for in the Prepetition Credit Documents;

(4) certain additional reporting with respect to the Debtors and certain of their affiliates; and

(5) the Debtors' compliance with the covenants listed on Schedule 8(e) to the Interim Order.

¶ 8.

Carve Out: The Adequate Protection Liens and the Adequate Protection Claim shall be subject to the payment, without duplication, of the following fees and claims (collectively, the "Carve Out"):

(1) The claims of the respective retained professionals (i) of the Debtors for unpaid fees and expenses incurred at any time on and after the Petition Date and prior to the Termination Date and (ii) any official committee of unsecured creditors (the "Creditors' Committee") appointed in the Cases (together with the Debtors' retained professionals, the "Retained Professionals") for unpaid fees and expenses incurred at any time on and after the date the Creditors' Committee is formed and prior to the Termination Date up to the amount set forth in the Budget; provided that (I) in the case of all Retained Professionals such fees shall only be included in the Carve-Out to the extent such fees are ultimately allowed on a final basis by this Court under sections 330 or 331 of the Bankruptcy Code, and are not excluded from the Carve-Out under paragraph 13 of the Interim Order (such fees and expenses described in this clause (a), the "Pre-Termination Date Expenses" and the permitted amount thereof, the "Pre-

| | |
|---|---|
| | Termination Date Amount") and (II) nothing herein shall be construed to impair the ability of any party to object to any of the fees, expenses, reimbursement or compensation described in this clause; |
| | (2) claims of the Retained Professionals for unpaid fees and expenses incurred on and after the Termination Date; provided that, in each case, such fees and expenses are ultimately allowed on a final basis by the Court, are not excluded from the Carve-Out under paragraph 13 of the Interim Order, do not exceed $400,000 in the aggregate for the Retained Professionals of the Debtors and do not exceed $75,000 in the aggregate for the Retained Professionals of the Creditors' Committee; |
| | (3) unpaid fees payable to the United States Trustee and Clerk of the Bankruptcy Court pursuant to Section 1930 of title 28 and Section 3717 of title 31 of the United States Code; and |
| | (4) unpaid operating expenses that were incurred prior to the Termination Date, solely to the extent that such claims would have been authorized to be paid by the Debtors prior to such date, pursuant to the Budget, if the Termination Date had not occurred. |
| | ¶ 10. |
| **Material Terms, Including Duration, of Use of Cash Collateral** (Bankr. R. 4001(b)(1)(B)(iii)) | Term. The Debtors' authorization to use Cash Collateral shall commence as of entry of the Interim Order and terminate upon the Termination Date. |
| | ¶ 16. |
| | Termination Date. Subject to the Carve-Out, the use of Cash Collateral shall terminate effective on the earlier to occur of (a) receipt by the Debtors of written notice from the Agent of the occurrence and continuance of an Event of Default; and (b) 11:59 p.m. (prevailing Eastern time) on September 30, 2010 (or such longer period of time as may be consented to by the Agent). |
| | ¶ 16. |
| | Events of Default. The occurrence of any of the following events shall constitute an Event of Default: |
| | (1) use of the Cash Collateral other than as set forth in the Interim Order; |
| | (2) the Debtors or any other party applies to the Court for an order authorizing the use of the Cash Collateral or that seeks approval of a priming, senior, pari passu or junior security interest in or lien upon the Cash Collateral or the Prepetition |

|  |  |
|---|---|
|  | Collateral; |
| (3) | the filing by the Debtors of any pleading seeking to challenge the Agent's lien upon the Cash Collateral or the Prepetition Collateral or otherwise asserting rights, claims or causes of action against the Agent and/or the Prepetition Secured Parties with respect to the Prepetition Debt, or the entry of an order granting any such relief in connection with any such pleading filed by a third party; |
| (4) | the material breach by any of the Debtors of their obligations under the Interim Order, including but not limited to their failure to be in Compliance with the Budget or the failure to comply with the covenants, events of default, reporting and other requirements contained in Paragraphs 8(d) and 8(e) of the Interim Order; |
| (5) | any stay, reversal, vacatur or rescission of the Interim Order; |
| (6) | the dismissal of, conversion of or appointment of an examiner with expanded powers in the Debtors' chapter 11 cases; |
| (7) | the failure to meet any obligations of the Debtors in the Interim Order related to the Sale Process; |
| (8) | the failure to obtain entry of a final order approving the use of the Cash Collateral in form and substance satisfactory to the Agent in its sole discretion on or before the date that is thirty (30) days from the Petition Date; and |
| (9) | the occurrence and continuance of an Event of Default listed on Schedule 8(e) to the Interim Order. |
| ¶ 17. |  |
|  | Effect of Stipulations.  The stipulations and admissions contained in the Interim Order are binding upon the Debtors in all circumstances.  The stipulations and admissions contained in the Interim Order are binding upon all other parties in interest, including, without limitation, any Committee appointed in these chapter 11 cases, unless (a) a party in interest has timely filed an adversary proceeding or contested matter by no later than the date that is the later of (i) thirty (30) days after the Petition Date, (ii) such later date as has been agreed to, in writing, by the Agent in its sole discretion or (iii) such later date as has been ordered by the Court prior to the expiration of the period set forth in (i) or (ii), above (1) challenging the validity, enforceability, priority or extent of the Prepetition Debt or the Prepetition Security Interests on the Prepetition Collateral or (2) otherwise asserting or prosecuting any |

action for preferences, fraudulent conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, "Claims and Defenses") against the Agent or the Prepetition Secured Parties or their affiliates, representatives, attorneys or advisors in connection with matters related to the Prepetition Credit Documents, the Prepetition Secured Obligations, or the Prepetition Collateral, and (b) there is a final order in favor of the plaintiff sustaining any such challenge or claim in any such timely filed adversary proceeding or contested matter, provided that as to the Debtors, all such Claims and Defenses are irrevocably waived and relinquished as of the Petition Date.

¶ 24.

Restriction on Use of Cash Collateral and Carve-Out. The Cash Collateral may not be used to:

(1) object, contest or raise any defense to, the validity, authorization, perfection, priority, extent, or enforceability of the Prepetition Debt, the liens securing the Prepetition Debt, the liens granted to the Agent or the Prepetition Secured Parties by the Interim Order, or the Adequate Protection;

(2) assert any claims or causes of action against the Agent or the Prepetition Secured Parties;

(3) as long as the Debtors are authorized or able to continue to use the Cash Collateral pursuant to the terms of the Interim Order, attempt to obtain, without the consent of the Agent, or over the objection of the Agent, the Court's authorization to use the Cash Collateral under terms other than those provided in the Interim Order or the Court's authorization to grant any priming, senior, pari passu or junior security interest in or lien on the Prepetition Collateral or Cash Collateral;

(4) prevent, hinder or otherwise delay the Prepetition Secured Parties' assertion, enforcement or realization on the Cash Collateral or the Prepetition Collateral in accordance with the Prepetition Secured Credit Documents or the Interim Order; or

(5) pay any amount on account of any claims arising prior to the Petition Date unless such payments are consistent with the Budget and approved by an order of this Court; provided, however that no more than $25,000 in the aggregate of the Cash Collateral may be used by the Creditors' Committee to investigate any such claims, actions or causes of action.

¶ 13.

|   | Sale Milestones: The following are conditions to the Debtors' continuing use of the Cash Collateral: |
|---|---|
|   | (1) on or before the first (1st) day following the Petition Date, file a sale and bid procedures motion, including therewith a list of assets to be sold, in form and substance satisfactory to Agent in its sole discretion, and on or before September 3, 2010 file with the Court as an exhibit to the Bidding Procedures and make available in the Debtors' data room the proposed form of asset purchase agreement as described in the Bidding Procedures, in form and substance satisfactory to Agent and Debtor as agreed between them; |
|   | (2) on or before September 14, 2010, obtain entry from the Bankruptcy Court of an order (the "<u>Bid Procedures Order</u>") approving bid procedures (and attaching the list of assets to be sold) in form and substance satisfactory to the Agent in its sole discretion, which order shall authorize (1) credit bids by the Agent on behalf of the Prepetition Secured Parties, (2) deem each of the Prepetition Secured Parties a "Qualified Bidder" (as to be defined in the Bid Procedures Order) and (3) the solicitation of bids for the sale of the Debtors' assets and which shall set a deadline (the "<u>Bid Deadline</u>") to receive bids related to such sale of no later than October 6, 2010; |
|   | (3) on or before October 7, 2010, conduct an auction, if necessary; |
|   | (4) on or before October 22, 2010, obtain entry of an order of the Bankruptcy Court approving the sale in form and substance satisfactory to the Agent in its sole discretion (the "<u>Sale Order</u>"); and |
|   | (5) on or before October 25, 2010, close the sale. |
|   | ¶ 14(a). |

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

4. The predicates for the relief requested herein are sections 105, 361, 362 and 363 of the Bankruptcy Code, Bankruptcy Rule 4001 and Local Rule 4001-2.

## BACKGROUND

### A. Introduction

5. On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

6. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7. No trustee, examiner, or committee has been appointed.

8. A description of the Debtors' businesses, prepetition capital structure and circumstances leading to the chapter 11 filings are set forth in the Frank Declaration.

### B. Capital Structure

9. Debtor GSCP (NJ), L.P. ("NJLP"), as borrower, and certain of NJLP's debtor and non-debtor affiliates as guarantors, are party to that certain Fourth Amended and Restated Credit Agreement dated as of February 28, 2007 (as amended, restated, supplemented or otherwise modified from time to time, the "Prepetition Credit Agreement," and, collectively with the related pledge and security agreements, mortgages, deeds of trust, security documents, consent and agreement documents and other loan documents, the "Prepetition Credit Documents"), with Black Diamond Commercial Finance, L.L.C., as Agent and the Prepetition Lenders from time to time party thereto.

10. As of the Petition Date, the Debtors were indebted to the Prepetition Secured Parties in the aggregate principal amount of approximately $209,607,376 in respect of loans made by the Prepetition Secured Parties for the account of the Debtors pursuant to the

Prepetition Credit Documents, plus interest thereon and fees, costs and expenses incurred in connection therewith as provided in the Prepetition Credit Documents (collectively, together with any other amounts outstanding under the Prepetition Credit Documents, the "<u>Prepetition Debt</u>"). The Prepetition Debt is secured by liens and security interests in substantially all of the Debtors' assets.

## **RELIEF REQUESTED**

11. By this Motion, the Debtors request entry of appropriate orders:

(i) authorizing the Debtors to use the Cash Collateral pursuant to sections 361, 362 and 363 of the Bankruptcy Code, and other collateral, including Prepetition Collateral in which the Prepetition Secured Parties have an interest, and provide adequate protection with respect to any diminution in the value of the Prepetition Secured Parties' interests in the Prepetition Collateral resulting from the use of the Cash Collateral and the use, sale or lease of the Prepetition Collateral (other than the Cash Collateral) or imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code;

(ii) scheduling, pursuant to Bankruptcy Rule 4001, an interim hearing (the "<u>Interim Hearing</u>") on this Motion for this Court to consider entry of the interim order annexed to the Motion (i) authorizing the use by the Debtors of the Cash Collateral, and (ii) granting the adequate protection;

(iii) scheduling, pursuant to Bankruptcy Rule 4001, the Final Hearing for this Court to consider entry of the Final Order authorizing the use of the Cash Collateral on a final basis, as set forth in this Motion; and

(iv) granting certain related relief.

12. The Debtors and the Agent have reached an agreement regarding, and request that the Court approve, the Debtors' use of Cash Collateral on the terms set forth herein and in the Interim Order. The Debtors submit that absent authorization to use Cash Collateral to fund these chapter 11 cases, the Debtors, their estates and creditors will suffer immediate and irreparable harm.

**BASIS FOR RELIEF**

13. Section 363 of the Bankruptcy Code governs the Debtors' use of property of the estates.[4] Section 363(c)(1) of the Bankruptcy Code provides that:

> If the business of the debtor is authorized to be operated under Section . . . 1108 . . . of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1).

14. Section 363(c)(2) of the Bankruptcy Code, however, provides an exception with respect to "cash collateral" to the general grant of authority to use property of the estate in the ordinary course set forth in section 363 of the Bankruptcy Code. Specifically, a trustee or debtor in possession may not use, sell, or lease "cash collateral" under subsection (c)(1) unless:

> (A) each entity that has an interest in such collateral consents; or
>
> (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2).

15. Accordingly, pursuant to Section 363(c)(2) of the Bankruptcy Code, a debtor may not use cash collateral without the consent of the secured party or approval from the Court. After extensive negotiations, the Agent has consented to the use of the Cash Collateral pursuant to the terms and conditions set forth in the Interim Order. The Debtors submit that,

---

[4] Pursuant to section 1107 of the Bankruptcy Code, a debtor in possession has all of the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in compliance with section 363 of the Bankruptcy Code. See 11 U.S.C. § 1107(a).

under the circumstances here, including the Debtors' need to use Cash Collateral and the adequate protection afforded to the Prepetition Secured Parties, their request to use Cash Collateral should be approved.

### A. Debtors' Need to Use Cash Collateral

16. Under the Prepetition Credit Documents, NJLP, GSCP (NJ), Inc., GSCP (NJ) Holdings, L.P., and GSC Group granted to the Agent, for the benefit of the Prepetition Secured Parties, continuing, first-priority security interests (the "<u>Prepetition Security Interests</u>") in and liens upon, among other things, all Bank Accounts and all deposits therein, all Contracts and Contract Rights, all General Intangibles and Receivables, all Securities and all options and warrants related to Securities, all Limited Liability Company Interests, all Partnership Interests, all Collateral Accounts, all Security Entitlements, all Financial Assets and Investment Property, all Proceeds of the foregoing, and all indemnities covering any or all of the foregoing, in each case as defined and described in greater detail in the Prepetition Credit Documents (the "<u>Cash Collateral</u>") and subject to certain limitations set forth in the Prepetition Credit Documents.

17. Based on the foregoing, the Debtors do not have sufficient unencumbered resources to continue to operate their businesses. Without the relief requested herein, the Debtors' businesses will fail and the value of their assets will be destroyed. Indeed, the Debtors are proposing a sale of a significant portion of their assets and preserving the businesses is central to maximizing value for the Debtors' estates and creditors. Simply stated, without authorization to utilize the Cash Collateral, the Debtors may not be able to remain in business to consummate the contemplated asset sales.

### B. Proposed Adequate Protection

18. The Debtors recognize that the Prepetition Secured Parties are entitled, pursuant to sections 361 and 363(e) of the Bankruptcy Code, to adequate protection of their

interests in the Cash Collateral. Section 363(e) of the Bankruptcy Code provides that on request of an entity that has an interest in property used or proposed to be used by the debtor, the Court shall prohibit or condition such use as is necessary to provide "adequate protection" of that interest. 11 U.S.C. §363(e).

19. What constitutes "adequate protection" is a "fact-specific inquiry." *See In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996). The purpose of adequate protection is to prevent the diminution in the value of the secured creditors' interests in their collateral during the reorganization process. *See In re WorldCom, Inc.*, 304 B.R. 611, 618-19 (Bankr. S.D.N.Y. 2004) ("The legislative history for section 361 of the Bankruptcy Code, which sets forth how adequate protection may be provided under section 363, makes clear that the purpose is to insure that the secured creditor receives value for which the creditor bargained for prior to the debtor's bankruptcy."); *In re Gallegos Research Group Corp.*, 193 B.R. 577, 584 (Bankr. D. Colo. 1995) ("[T]o determine whether an entity is entitled to adequate protection and the type and amount of adequate protection required, a court must determine the value of the collateral, the creditor's interest in the collateral and the extent to which that value will decrease during the course of the bankruptcy case"); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986) (focus is on protection of the secured creditor from diminution in value of its collateral during reorganization process). However, "[a]dequate protection, not absolute protection, is the statutory standard." *Beker*, 548 B.R. at 741.

20. In consideration for the Debtors' use of the Prepetition Secured Parties' Cash Collateral, the Debtors have agreed, subject to this Court's approval, to provide the Prepetition Secured Parties with the following as adequate protection (collectively, the "<u>Adequate Protection</u>"). Specifically, the Adequate Protection is as follows:

(a) to the extent of the diminution in value of the Prepetition Collateral, Adequate Protection Liens on the Cash Collateral (subordinate to the Carve-Out and not including more than 65% of the equity in a foreign entity held by any Debtor);

(b) to the extent of the diminution in value of the Prepetition Collateral, superpriority claim over all administrative expense claims and unsecured claims against the Debtors, now existing or hereafter arising of any kind or nature whatsoever, as provided for in section 507(b) of the Bankruptcy Code (subordinate to the Carve-Out);

(c) current cash payments from the Debtors of all fees and expenses payable to the Agent under the Prepetition Credit Documents, including but not limited to, the reasonable fees and expenses of counsel for the Agent, in each case as provided for in the Prepetition Credit Documents;

(d) certain additional reporting with respect to the Debtors and certain of their affiliates; and

(e) the Debtors' compliance with certain additional covenants listed on Schedule 8(e) to the Interim Order.

21. The Debtors submit that the requested use of Cash Collateral and the protections afforded the Prepetition Secured Parties in the Interim Order are reasonable, appropriate, and sufficient to satisfy the legal standard of adequate protection.

**C.    The Budget**

22. The Debtors have prepared and delivered to the Agent the Budget (which is attached to the Interim Order as <u>Exhibit A</u>). The Budget has been thoroughly reviewed by the Debtors and their management and sets forth for the periods covered thereby, among other things, the Debtors' projected monthly disbursements for each month commencing with the month starting on the Petition Date. The Debtors represent that (i) the Budget is achievable and will allow the Debtors to operate in these chapter 11 cases without the accrual of unpaid administrative expenses, and (ii) the Budget includes all reasonable, necessary, and foreseeable

expenses to be incurred in connection with the operation of the Debtors' businesses for the period set forth in the Budget.

23. Within five (5) business days after the end of each two week period, the Debtors shall deliver to the Agent (i) an updated Budget, and (ii) a Budget variance report, each in form and substance reasonably satisfactory to the Agent. "Compliance" with the Budget shall be measured bi-weekly and defined as the maintenance of compliance with both (i) the overall amount of the Budget within a ten percent (10%) deviation from such Budget, and (ii) certain items on a line-by-line basis in the percentages indicated in the Budget.

**D.      Interim Approval Final Hearing Date Shall Be Established**

24. Bankruptcy Rule 4001(b) permits a court to approve a debtor's request for use of cash collateral during the fourteen (14) days following service of a motion requesting authorization to use cash collateral, "only . . . as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(b)(2). In examining requests for interim relief under this rule, courts apply the same business judgment standard applicable to other business decisions. *See*, *e.g.*, *In re Simasko Production Co.*, 47 B.R. 444, 449 (D. Co. 1985); *see also In re Ames Dep't Stores Inc.*, 115 B.R. 34, 38 (Bank S.D.N.Y. 1990).

25. After the Rule 4001(b) period, the request for use of cash collateral is not limited to those amounts necessary to prevent destruction of the debtor's business. A debtor is entitled to use cash collateral that it believes prudent in the operation of its business. *See*, *e.g.*, *Simasko*, 47 B.R. at 449; *Ames Dep't Stores*, 115 B.R. at 36.

26. Pursuant to Bankruptcy Rule 4001(b), the Debtors request that the Court conduct an expedited preliminary hearing, pending the final hearing, to consider the relief requested by this Motion. In connection with such preliminary hearing, and the pendency period thereafter before a final hearing on this Motion, the Debtors request that the Court authorize the

Debtors to use the Cash Collateral as the use of Cash Collateral is essential for the preservation of the value of the Debtors' estates and necessary to avoid immediate and irreparable harm.

## **NOTICE AND PRIOR MOTIONS**

27. Notice of this Motion has been provided to: (i) the Office of the United States Trustee for Region 2, serving the Southern District of New York; (ii) the Prepetition Secured Parties; (iii) the creditors (excluding insiders) holding unsecured claims on a consolidated basis against the Debtors; (iv) the Internal Revenue Service; (v) the United States Securities and Exchange Commission; (vi) the United States Attorney's Office; (vii) the United States Attorney General; (viii) the New York State Attorney General; (ix) the New York State Taxing Authority; (x) the New York City Taxing Authority; (xi) the holders of existing liens; (xii) other affected parties; and (xiii) all other parties required to receive notice pursuant to Bankruptcy Rules 2002, 4001 or 9014 or requesting to receive notice before the date hereof.

28. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice of this Motion is necessary or required.

29. No previous request for the relief sought herein has been made.

[*Remainder of page has been left blank intentionally*]

WHEREFORE, the Debtors respectfully request that the Court enter an order (i) (a) authorizing the Debtors to utilize Cash Collateral, (b) granting adequate protection to the Prepetition Secured Parties, (c) scheduling a Final Hearing pursuant to Bankruptcy Rule 4001(b) to approve the Interim Order on a final basis, and (d) granting related relief; and (ii) granting such other and further relief as may be just and proper.

Dated: August 31, 2010
New York, New York

Respectfully submitted,
**GSC GROUP, INC., ET AL.,**

KAYE SCHOLER LLP

By: */s/ Michael B. Solow*
Michael B. Solow
Seth J. Kleinman
425 Park Avenue
New York, NY 10022
Telephone: (212) 836-8000
Facsimile: (212) 836-8689

-and-

D. Tyler Nurnberg (*pro hac vice* pending)
Matthew J. Micheli (*pro hac vice* pending)
70 West Madison Street, Suite 4100
Chicago, IL 60602
Telephone: (312) 583-2300
Facsimile: (312) 583-2360

Proposed Attorneys for the Debtors
 and Debtors-in-Possession