KAYE SCHOLER LLP

425 Park Avenue
New York, NY 10022
Telephone: (212) 836-8000
Facsimile: (212) 836-8689
Michael B. Solow
Seth J. Kleinman

-and-

70 West Madison Street, Suite 4100
Chicago, IL 60602
Telephone: (312) 583-2300
Facsimile: (312) 583-2360
D. Tyler Nurnberg (*pro hac vice* pending)
Matthew J. Micheli (*pro hac vice* pending)

Proposed Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GSC Group, Inc., <u>et al.</u>,[1] | ) | Case No. 10-14653 (ALG) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**DEBTORS' MOTION FOR ENTRY OF (I) AN ORDER APPROVING (A)
BIDDING PROCEDURES, (B) FORM AND MANNER OF NOTICE OF SALE,
AND (C) PROCEDURES FOR DETERMINING CURE AMOUNTS, AND (II) AN
ORDER AUTHORIZING (A) SALE OF ASSETS FREE AND CLEAR OF ALL LIENS,
CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, AND (B) ASSUMPTION
<u>AND ASSIGNMENT OF EXECUTORY CONTRACTS TO SUCCESSFUL BIDDER(S)</u>**

GSC Group, Inc. ("<u>GSC Group</u>") and certain of its direct or indirect subsidiaries and

affiliates (collectively, the "<u>Debtors</u>") hereby file this motion (this "<u>Motion</u>") for orders, pursuant

---

[1] The Debtors, along with the last four digits of each Debtor's federal tax identification number, are: GSC Group, Inc. (6382), GSCP, LLC (6520), GSC Active Partners, Inc. (4896), GSCP (NJ), Inc. (3944), GSCP (NJ) Holdings, L.P. (0940), GSCP (NJ), L.P. (0785), and GSC Secondary Interest Fund, LLC (6477).

to sections 105(a), 363(b) and (f), 365, 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and Rules 2002(a)(2), 6004(a), (b), (c), (e) and (f), 6006(a) and (c), 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) approving (a) bidding procedures, (b) the form and notice of sale, and (c) procedures for determining cure amounts (the "Bidding Procedures Order"), substantially in the form attached hereto as Exhibit A, and (ii) authorizing (a) the sale of assets free and clear of all liens, claims encumbrance, and other interests, and (b) the assumption and assignment of executory contracts to the successful bidder(s) (the "Sale Order").  In support of this Motion, the Debtors submit the Declaration of Robert Manzo (the "Manzo Declaration"), and further state as follows:

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3.      The predicates for the relief requested herein are sections 105(a), 363(b) and (f), 365, 503 and 507 of the title 11 of the Bankruptcy Code and Rules 2002(a)(2), 6004(a), (b), (c), (e) and (f), 6006(a) and (c), 9007 and 9014 of the Bankruptcy Rules.

## BACKGROUND

4.      On August 31, 2010 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5.      The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      No trustee, examiner, or committee has been appointed.

7.      A description of the Debtors' businesses, prepetition capital structure and the circumstances leading to the chapter 11 filings are set forth in the Declaration of Peter R. Frank

in Support of Chapter 11 Petitions and First Day Orders filed on the Petition Date.

## **RELIEF REQUESTED**

8.      The Debtors are selling all or substantially all of their assets, which consist

primarily of the assets owned, held, or used in the Debtors' investment management business,

including debt and equity interests in partnerships, limited liability companies and investment

vehicles to which the Debtors (or their non-debtor affiliates) provide investment management

services or serve as general partner, limited partner, member or in a similar capacity.[2]

9.      By this Motion, the Debtors seek the entry of two (2) orders, each to be deemed

effective immediately upon their entry by waiving the fourteen-day stay under Bankruptcy Rules

6004(h) and 6006(d):

> (a)    first, the Bidding Procedures Order, providing a process for interested
> bidders to submit offers with respect to the Assets:
>
>> (i)     approving the form and manner of notice of this Motion and the
>> relief requested herein;
>>
>> (ii)    scheduling a hearing to approve the procedural relief requested in
>> this Motion (the "Bidding Procedures Hearing");
>>
>> (iii)   setting a deadline and approving requirements and procedures for
>> interested parties to submit bids for the Assets (the "Bidding
>> Procedures," a copy of which are attached hereto as Exhibit B);
>>
>> (iv)    approving the Cure Procedures, as set forth in the Assignment and
>> Cure Notice attached hereto as Exhibit C, for noticing
>> counterparties and Consent Parties (as defined below) to Executory
>> Contracts (as defined below) of the proposed assumption and
>> assignment of the Executory Contracts to the Successful Bidder (as
>> defined below) and determining cure amounts in connection
>> therewith, and requesting additional information regarding
>> adequate assurance of future performance;
>>
>> (v)     scheduling an auction (the "Auction") of the Assets; and

---

[2]      The Debtors will file a list of the assets for sale on or before September 3, 2010 (collectively, the "Assets").

(vi)     setting a final hearing date (the "Sale Hearing") to approve the sale of all or any portion of the Assets to the bidder or bidders (each a "Successful Bidder") submitting the highest or otherwise best offer for such Assets (each a "Successful Bid") acceptable to the Debtors.

(b)     second, to the extent that the Debtors determine a bid to purchase all or any portion of the Assets to be a Successful Bid, the Debtors will request entry of an order (the "Sale Order"):

(i)     authorizing and approving the Successful Bid(s) on substantially the terms and conditions set forth in the respective Purchase Agreement (as defined below);

(ii)     authorizing (1) the sale of the Assets to the Successful Bidder(s) on the terms and conditions set forth in the Form APA, the Short Form APA and/or the Modified APA (each as defined in the Bidding Procedures) (each a "Purchase Agreement"), as the case may be, with such sale to be free and clear of all liens, claims, interests, and encumbrances, (2) the Debtors' assumption and assignment of any executory contracts or unexpired leases (collectively, the "Executory Contracts") designated by a Successful Bidder in its Purchase Agreement, and (3) each Successful Bidder's assumption of certain liabilities, subject to the terms of its Purchase Agreement and the Sale Order;

(iii)     authorizing relief consistent with the foregoing in connection with any party submitting the highest and/or best offer for Assets at the Auction, in accordance with the Bidding Procedures; and

(iv)     authorizing the Debtors to consummate all transactions related to the above.

## THE PROPOSED SALE OF THE DEBTORS' ASSETS

### A.     The Need for Immediate Action

10.     As a financial advisory firm, the Debtors are materially impacted by both the financial markets and worldwide economic conditions. During 2008, and continuing through the first half of 2009, the Debtors operated in a very unfavorable global business environment, and were forced to cope with a continued lack of liquidity in the credit markets and declining asset values. In the second half of 2009, improving market conditions resulted in increased revenues;

however, continued instability in the financial and credit markets did not alleviate the Debtors' liquidity problems and they were unable to service their debt.

11.     The Debtors are in default under the terms of that certain fourth amended and restated credit agreement dated as of February 28, 2007 by and among the Debtors, Black Diamond Commercial Finance, L.L.C., as agent (the "<u>Agent</u>") and the lenders party thereto (the "<u>Prepetition Lenders</u>") (as amended, modified or supplemented from time to time, the "<u>Existing Credit Agreement</u>").  The Debtors commenced these cases in order to facilitate the sale of the Assets as soon as practicable to satisfy their obligations to the Agent and the Prepetition Lenders.

12.     The Debtors' management believes that the immediate sale of the Assets, as contemplated by this Motion, is critical to preserving the value of the Assets for the benefit of all creditors and stakeholders.  Without an immediate sale, the Debtors will be unable to operate their business without incurring a significant loss to all stakeholders.

### B.     Prepetition Negotiations

13.     In the months leading up to the Petition Date, the Debtors had extensive negotiations with the representatives of Black Diamond Capital Management, L.L.C. (whose affiliates or funds managed by it hold a majority of the principal amount of the obligations due and owing under the Existing Credit Agreement) with respect to in-court and out-of-court restructuring options and a possible sale of the Assets.  Negotiations between Black Diamond Capital Management, L.L.C.  and the Debtors did not result in an agreement.

14.     In consultation with their financial advisor, Capstone Advisory Group, LLC ("<u>Capstone</u>"), the Debtors determined that a sale of the Assets pursuant to the Bidding Procedures was the only feasible strategy to preserve value.  A number of parties contacted the Debtors to express their interest in purchasing certain of the Assets.  While the Assets were not

extensively marketed before the Petition Date, the Debtors believe, based on the interest received to date, that the proposed marketing process is likely to produce multiple bidders.

C.   **Proposed Bidding Procedures**

15.     In an effort to ensure that the highest value is obtained for the Assets, the Debtors propose that the Bidding Procedures, which are most likely to maximize the value of the Assets, shall govern the submission of competing bids for the Assets.

16.     The Bidding Procedures are attached hereto as <u>Exhibit B</u> and the salient terms thereof are summarized as follows:[3]

(a)    <u>Assets</u>:  A list of the Assets will be posted in a virtual data room and the Debtors reserve the right, at any time, from time to time, to add or remove assets from the list of Assets for sale with the consent of the Agent, which consent shall not be unreasonably withheld.

(b)    <u>Lots</u>.  Bidders are invited to submit a bid for substantially all of the Assets or, at the bidder's election, for specifically identified lots of Assets (the "<u>Lots</u>") or combinations of Lots that the bidder may desire as set forth in the Bidding Procedures.  A list of the Lots that are available for individual bids or group bids will be posted in a virtual data room.

(c)    <u>Qualified Bid / Qualified Bidders</u>:  In order to ensure that only bidders with serious interest in the purchase of the Assets participate in the bidding process, the Bidding Procedures set forth the minimal requirements for a potential bidder to become a "Qualified Bidder" and for a bid to purchase the Assets to be a "Qualified Bid".

(d)    <u>Due Diligence</u>:  The Bidding Procedures permit all potential bidders who sign a confidentiality agreement acceptable to the Debtors to participate in the due diligence process through and including the Bid Deadline.

(e)    <u>Bid Deadline</u>:  The Bidding Procedures provide for a bid deadline of October 5, 2010.

(f)    <u>Auction</u>:  If one or more Qualified Bids are received by the Debtors, an Auction, conducted as set forth in the Bidding Procedures, shall be held on

---

[3]     This summary of the proposed Bidding Procedures is provided as a convenience only.  Defined terms used, but not specifically defined, herein shall have the meanings ascribed to them in the Bidding Procedures.  To the extent of any inconsistency between the summary set forth herein and the Bidding Procedures, the terms and conditions of the Bidding Procedures shall govern.

October 7, 2010 starting at 10:00 a.m. (prevailing Eastern Time) at Kaye Scholer LLP, 425 Park Avenue, New York, NY 10022, or at such other place, date and time as may be designated at any time or from time to time in writing by the Debtors.

(g) <u>Selection of the Successful Bid(s)</u>: Prior to the conclusion of the Auction, the Debtors will take the various bids received under consideration and determine and announce to the Qualified Bidders which bid, or combination of bids, is in the best interests of the Debtors and their estates. The Debtors reserve the right to (a) determine in their sole discretion which bid or combination of bids is highest or otherwise best, (b) reject at any time prior to the Court's approval of a bid, without liability, any bid that the Debtors deem to be (x) inadequate or insufficient, (y) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or the Bidding Procedures, or (z) contrary to the best interests of the Debtors or their estates.

(h) <u>The Sale Hearing</u>: Each Successful Bid will be subject to approval by the Court at the Sale Hearing to approve the sale of the Assets included in that particular bid. Please be advised that the Sale Hearing to approve a proposed sale of Assets to one or more Successful Bidders will take place before the Honorable Arthur Gonzalez in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004-1408 on October 22, 2010, at [__]:00 [a.m./p.m.] (prevailing Eastern Time), or at such time thereafter as counsel may be heard. The Successful Bidder should be represented by counsel at the Sale Hearing.

(i) <u>Consent Rights</u>. The transfer of certain of the Assets, including the Debtors' rights under certain agreements, may, under the operative agreements or applicable law, require the consent of certain parties (the "<u>Consent Parties</u>"). In those instances, the Debtors will notify the Consent Parties as provided herein and in the Bidding Procedures.

(j) <u>Reservation of Rights</u>: Notwithstanding any of the foregoing, the Debtors reserve their rights, in the exercise of their fiduciary obligations, to modify the Bidding Procedures or impose, at or prior to the Auction, additional customary terms and conditions on the sale of the Assets, including, without limitation, extending the deadlines set forth herein, modifying bidding increments, adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court without further notice; *provided, however*, that the Debtors cannot change any deadlines in the Bidding Procedures or the Bidding Procedures Order without the Agent's consent, except pursuant to court order sought by Debtors based on changed circumstances, with respect to which all of the Agent's rights are reserved.

### D. Extraordinary Provisions Under the Guidelines

17.     The Debtors anticipate that the Purchase Agreements are likely to contain items

that may be considered Extraordinary Provisions[4] under the Amended Guidelines for the

Conduct of Asset Sales (General Order M-383) (the "Guidelines"), including the following:

(a)     Record Retention.  The Debtors are seeking to sell a substantial portion of their
assets, including certain of their books and records.  However, the Purchase
Agreements are expected to provide that the Debtors will retain, or have
reasonable access to, their books and records thereby enabling them to administer
these chapter 11 cases in an orderly and efficient manner.  In addition, the
Bidding Procedures require that any bid that contemplates the purchase of the
Debtors' books and records must include similar provisions allowing the Debtors
reasonable access to such books and records.

(b)     Relief from Bankruptcy Rules 6006(d) and 6004(h).  The Debtors' lack of
liquidity requires them to sell the Assets as soon as possible.  In addition, bidders
are expected to want to close as soon as possible after entry of the Sale Order
approving their transaction.  Similarly, bidders are expected to request the
assumption and assignment of Executory Contracts as soon after the entry of an
order approving such assignments as possible.  Therefore, the Debtors request that
any Sale Order approving the sale of the Assets contain a waiver of the stays
imposed by Bankruptcy Rules 6006(d) and 6004(h).

(c)     Agreements with Management.  The Debtors' Chief Executive Officer, Alfred C.
Eckert III has negotiated a consulting agreement and the Debtors' Senior
Managing Director, Peter R. Frank, has negotiated an employment agreement
with Black Diamond Capital Management L.L.C. for services to be provided after
the sale has been completed.

## BASIS FOR RELIEF

### A. The Proposed Sale is in the Best Interests of the Debtors, their Creditors and their Estates

18.     Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice

and a hearing, may use, sell or lease, other than in the ordinary course of business, property of

the estate."  11 U.S.C. § 363(b)(1).  A debtor in possession is given these rights by

---

[4]  The following list of possible "Extraordinary Provisions" is not intended to be an admission that any of these
items are unusual relief in a large asset sale pursuant to section 363 of the Bankruptcy Code.  The Debtors further
reserve the right to add  or remove items on this list based on negotiations concerning the Purchase Agreements.

section 1107(a) of the Bankruptcy Code.  *See* 11 U.S.C. § 1107(a).  Moreover, section 105(a) of

the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is

necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C.

§ 105(a).

19.     Courts have uniformly held that approval of a proposed sale of property pursuant

to section 363(b) of the Bankruptcy Code is appropriate if a court finds that the transaction

represents a reasonable business judgment by the debtor.  *See, e.g., Parker v. Motors Liquidation*

*Company (In re Motors Liquidation Co.)*, 430 B.R. 65, 83 (S.D.N.Y. 2010) ("The overriding

consideration for approval of a Section 363 sale is whether a "good business reason" has been

articulated.") (*citing In re Chrysler LLC*, 576 F.3d 108, 111 (2d Cir. 2009), *judgment vacated for*

*unrelated reasons by Indiana State Police Pension Trust v. Chrysler LLC*, 130 S.Ct. 1015 (2009)

and *In re Chrysler, LLC*, 592 F.3d 370 (2d Cir. 2010)); *In re Iridium Operating LLC*, 478 F.3d

452, 466 (2d Cir. 2007).

20.     Additionally, prior to and after enactment of the Bankruptcy Code, courts have

permitted the sale of all or substantially all of a debtor's assets outside the ordinary course of

business if the proposed sale satisfies the following:  (a) a sound business justification exists for

the sale; (b) adequate and reasonable notice of the sale was given to interested parties; (c) the

sale will provide a fair and reasonable price for the property; and (d) the parties have acted in

good faith.  *See Motors Liquidation*, 430 B.R. at 97; *In re Chrysler LLC*, 405 B.R. 84

(Bankr.S.D.N.Y.2009), *aff'd* (by summary order), 576 F.3d 108 (2d Cir. 2009); *In re Lehman*

*Bros. Holdings, Inc.*, 415 B.R. 77, 80, 85 at n. 7 (S.D.N.Y. 2009).

21.     A sound business purpose for the sale of a debtor's assets outside the ordinary

course of business may be found where such a sale is necessary to preserve the value of assets

for the estate, its creditors or interest holders. *See, e.g., Chrysler*, 405 B.R. at 96 ("A debtor may sell substantially all of its assets as a going concern and later submit a plan of liquidation providing for the distribution of the proceeds of the sale . . .. This strategy is employed, for example, when there is a need to preserve the going concern value . . ."); *In re General Motors Corp.*, 407 B.R. 463 (Bankr. S.D.N.Y. 2009), *aff'd Parker v. Motors Liquidation Company (In re Motors Liquidation Co.)*, 430 B.R. 65 (S.D.N.Y. 2010) (same). In fact, the paramount goal in any proposed sale of property is to maximize the proceeds received by the estate. *See Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *The Official Committee of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 659 (Bankr. S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the . . . [debtors'] duty with respect to such sales is to obtain the highest price or greater overall benefit possible for the estate.") (*quoting In re Atlanta Packaging Prods., Inc.*, 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)).; *see also Chrysler*, 405 B.R. at 96; *General Motors*, 407 B.R. at 494; *Lehman Bros.*, 415 B.R. at 82.

22. As set forth herein, and as more fully described in the Manzo Declaration, the Debtors' Assets are valuable, but highly sensitive to changes in the marketplace. Their value is greatly dependent upon the Debtors' ability to assure their clients and customers of their financial and operational integrity. However, under the current circumstances, the Debtors are unable to offer such assurance. It is therefore urgent that the Debtors sell the Assets quickly or face the possibility of material diminution of their value.

**B.    The Proposed Bidding Procedures are in the Best Interests
of the Debtors, their Creditors and the Estates**

23.    Bidding procedures should be approved when they provide a benefit to the

debtor's estate by maximizing the value of the assets.  *See Integrated Res.*, 147 B.R. at 659 (such

procedures "encourage bidding and maximize the value of the debtor's assets"); *Fin. News

Network*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("court-imposed rules for the disposition of

assets . . . [should] provide an adequate basis for comparison of offers , and [should] provide for

a fair and efficient resolution of bankrupt estates");  *In re Edwards*, 228 B.R. 552, 561 (Bankr.

E.D. Pa. 1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public

sale designed to maximize value for the estate.").

24.    The proposed marketing process set forth herein and in the Bidding Procedures,

combined with the flexible Auction process that will allow bidding by Lots as well as for

substantially all of the Assets, is anticipated to lead to robust bidding that will result in the

highest and best possible offer for the Assets.

25.    Courts uniformly recognize that procedures intended to enhance competitive

bidding are consistent with the goal of maximizing the value received by the estate and therefore

are appropriate in the context of bankruptcy sales.  *See Integrated Res.*, 147 B.R. at 659 (such

procedures are created to "encourage bidding and to maximize the value of the debtor's assets");

*In re Fin. News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("court-imposed rules

for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and

[should] provide for a fair and efficient resolution of bankrupt estates"); *see also Lehman Bros*,

415 B.R. at 80 (approving expedited sale procedures designed to maximize value); *Chrysler*, 405

B.R. at 109 (same); *Motors Liquidation*, 430 B.R. at 98-99 (same).

26. The proposed Bidding Procedures will allow the Debtors to conduct the Auction in a controlled, fair and open fashion that will encourage participation by financially capable bidders who demonstrate the ability to close a transaction, thereby increasing the likelihood that the Debtors will receive the best possible consideration for the Assets. Consistent with bidding procedures used in comparable situations, and as described in the Manzo Declaration, the proposed Bidding Procedures use bid increments appropriate for a sale of this size. They also allow the Debtors to undertake the Auction process in as expeditious a manner as possible, which the Debtors believe is essential to maintaining and maximizing value for their estates.

27. The Bidding Procedures outlined herein are designed to strike a balance between inviting competitive bids and enabling the Debtors to close a sale with the Successful Bidder(s) within a reasonable time frame. The Bidding Procedures are fair, reasonable and necessary to promote the highest or best sale price, without imposing undue obstacles to the competitive bid process. The Debtors do not believe that the Bidding Procedures would unduly hamper the submission of bids.

28. For the foregoing reasons, the Debtors respectfully submit that this Court should authorize and approve the Bidding Procedures.

C. **The Sale of the Assets Free and Clear of Liens and Other Interests Is Authorized By Section 363(f)**

29. Section 363(f) of the Bankruptcy Code[5] permits the Debtors to sell assets free and clear of all liens, claims, interests, charges and encumbrances (with any such liens, claims,

---

[5] Section 363(f) of the Bankruptcy Code provides:

The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if --

(1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;
(2)    such entity consents;
(3)    such interest is a lien and the price at which such property is to be sold is greater than the

interests, charges and encumbrances attaching to the net proceeds of the sale with the same rights and priorities therein as in the sold assets). Because section 363(f) of the Bankruptcy Code is stated in the disjunctive, when proceeding pursuant to section 363(b), it is only necessary to meet one of the five conditions of section 363(f). *See In re Dundee Equity Corp.*, 1992 Bankr. LEXIS 4.36, 1992 WL 53743, at *12 (Bankr. S.D.N.Y. March 6, 1992) ("[s]ection 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met."). The Debtors believe that they will be able to demonstrate at the Sale Hearing that they have satisfied one or more of these conditions.

30.     If the Agent does not consent to the sale of the Assets, the Debtors expect that the sale will proceed (i) under section 363(f)(3), to the extent that the value to be received by the Debtors in consideration of the sale of the collateral is equal to or exceeds the value of the Agent's liens upon such collateral, or (ii) under section 363(f)(5), if the Agent and the Prepetition Lenders can be compelled to accept a monetary satisfaction of their claims. Additionally, the Agent will have the right to credit bid pursuant to section 363(k) of the Bankruptcy Code, and the Agent or any Prepetition Lender shall be considered a Qualified Bidder.

31.     The Debtors propose that any bona fide and allowed liens, claims, interests, charges or encumbrances against or in the Assets (collectively, the "Liens") shall attach to the sale proceeds with the same force, validity, effect, priority and enforceability as such Liens had in the Assets prior to such sale. *See MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 94

---

<div style="margin-left:2em">

aggregate value of all liens on such property;
(4)     such interest is in bona fide dispute; or
(5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

</div>

11 U.S.C. § 363(f).

(2d Cir. 1988) ("It has long been recognized that when a debtor's assets are disposed of free and clear of third-party interests, the third party is adequately protected if his interest is assertable against the proceeds of the disposition); *Circus Time, Inc. v. Oxford Bank & Trust (In re Circus Time, Inc.)*, 5 B.R. 1, 3 (Bankr. D. Me. 1979) (finding the Court's power to sell property free and clear of liens has long been recognized). Accordingly, section 363(f) authorizes the transfer and conveyance of the Assets free and clear any such claims, interests, liabilities or Liens.

### D. Assumption and Assignment of Certain Executory Contracts and Unexpired Leases

32. Assumption and assignment of certain executory contracts and unexpired leases is an integral part of the proposed sale. Accordingly, by this Motion, the Debtors are seeking approval of the assumption and assignment of the Executory Contracts to the Successful Bidder(s) under section 365 of the Bankruptcy Code.

### a. Business Judgment

33. Section 365(a) of the Bankruptcy Code authorizes a debtor in possession to assume an executory contract or unexpired lease subject to court approval. 11 U.S.C. § 365(a) ("Except as provided in Section 765 and 766 of this title and in subsections (b), (c) and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."). Assignment is governed by section 365(f) of the Bankruptcy Code. *See* 11 U.S.C. § 365(f)(2) ("The trustee may assign an executory contract or unexpired lease of the debtor only if — (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and (B) adequate assurance of future performance by the assignee of such contract or lease is provided whether or not there has been a default in such contract or lease").

34. Courts apply the "business judgment" standard in determining whether an unexpired lease or contract should be assumed by a debtor. *See Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993); *see also In re Network Access Solutions, Corp.*, 330 B.R. 67, 75 (Bankr. D. Del, 2005) ("The standard for approving the assumption of an executory contract is the business judgment rule"); *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (describing the business judgment test as traditional).

35. To determine if the business judgment test is met, the court "is required to examine whether a reasonable business person would make a similar decision under similar circumstances." *In re Exide Technologies*, 340 B.R. 222, 240 (Bankr. D. Del. 2006), *vacated on unrelated grounds by In re Exide Technologies*, 607 F.3d 957 (3d Cir. 2010) ("This is not a difficult standard to satisfy and requires only a showing that rejection will benefit the estate"). Specifically, a court should find that the assumption or rejection is elected on "an informed basis, in good faith, and with the honest belief that the assumption [is] in the best interests of [the debtor] and the estate." *Network Access Solutions*, 330 B.R. at 75. Under this standard, a court should approve a debtor's business decision unless that decision is the product of bad faith or a gross abuse of discretion. *See In re Federal Mogul Global, Inc.*, 293 BR. 124, 127 (D. Del. 2003); *Lubrizol Enters. v. Richmond Metal Finishers*, 756 F.2d 1043, 1047 (4th Cir. 1985).

36. The Debtors expect that the Successful Bidder(s) will require the assumption and assignment of the Executory Contracts. The Executory Contracts are necessary for the Debtors to conduct their business, and, because no purchaser would enter into its Purchase Agreement without them, the assumption and assignment of the Executory Contracts is essential to inducing the best and highest offer for the Assets. Further, any cure payments will be borne solely by the

Successful Bidder(s).  Because the Debtors cannot otherwise obtain the benefits of the Purchase

Agreement(s), and cure payments will be borne by the Successful Bidder(s), the assumption of

the Executory Contracts is a sound exercise of the Debtors' business judgment.

        b.     <u>Adequate Assurance</u>

        37.     Next, the Debtors must provide the counterparty with "adequate assurance of

future performance", a determination of which is made on a case by case basis.  *See EBG*

*Midtown South Corp. v. McLaren/Hart Envtl. Engineering Corp. (In re Sanshoe Worldwide*

*Corp.)*, 139 B.R. 585, 592 (S.D.N.Y. 1992) (citations omitted), *aff'd*, 993 F.2d 300 (2d Cir.

1993); *see also In re Natco Indus., Inc*., 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate

assurance of future performance does not mean absolute assurance that assignee will thrive and

pay rent).  Significantly, among other things, adequate assurance may be provided by

demonstrating the assignee's financial health and experience in managing the type of enterprise

or property assigned.  *See, e.g., In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986)

(stating that adequate assurance of future performance is present when the prospective assignee

of lease from the debtor has financial resources and has expressed willingness to devote

sufficient funding to the business in order to give it a strong likelihood of succeeding).

        38.     Pursuant to the Bidding Procedures, the Debtors will require potential bidders to

provide evidence constituting adequate assurance of future performance to the counterparties to

Executory Contracts upon their request.  Specifically, the proposed Bidding Procedures require

each potential bidder to provide documentation of financial reliability, including:

> (i) to the extent that the bidder proposes to pay purchase
> consideration in whole or in part, from cash on hand (as reflected
> on its balance sheet), recent financial information that establishes,
> to the Debtors' satisfaction, such bidder's ability to pay the cash
> portion of the purchase price under the Modified APA, (ii) to the
> extent that such bidder is proposing to pay purchase consideration

with funds from any third-party financing source (whether such source is providing debt or equity financing), written evidence that establishes, to the Debtors' satisfaction, a firm commitment for such financing (including, without limitation, under any existing credit facility), in each case, containing no material conditions to the closing and funding of such financing other than satisfaction of the conditions set forth in the Modified APA and other than entry of the Sale Order and receipt of required government consents or approvals, and (iii) a combination of the materials described in (i) and (ii) above evidencing, to the Debtors' satisfaction, sufficient capitalization for such bidder.

39.     The Debtors believe that the foregoing information will give them, the counterparties to Executory Contracts and the Court the evidence necessary to establish that the Successful Bidder(s) has the financial wherewithal to perform under the Executory Contracts.

c.     Cure Procedures

40.     Pursuant to section 365(b) of the Bankruptcy Code, the Debtors must, prior to assumption of a contract or lease, cure existing defaults thereunder.  As set forth in the Cure and Assignment Notice, (i) the Debtors will identify Executory Contracts currently proposed to be assumed and assigned to the Successful Bidder(s), together with the proposed cure obligations necessary to be paid under section 365 of the Bankruptcy Code; and (ii) the counterparties to the Executory Contracts will receive notice of the proposed assumption and assignment, proposed cure amount, the proposed adequate assurance and the deadline to object.  The Debtors reserve their right to (i) withdraw the request to assume and assign any Executory Contract pursuant to the terms of the Successful Bidder(s)'s Purchase Agreements and (ii) add additional Executory Contracts to be assumed and assigned at the request of the Successful Bidder(s).

41.     Any cure objections, if not consensually resolved, will be heard by the Court at the Sale Hearing.  If the cure objection challenges the cure amount, the Debtors nonetheless request that they be authorized to move forward to assume and assign the Executory Contract that is the subject of the cure objection, provided that the cure amount asserted by the objector is

held in reserve.  If the Debtors receive an objection to a cure amount, the Debtors and the Successful Bidder(s) reserve the right to decide to reject the Executory Contract at issue if the cure amount is ultimately determined by order of the Court to be higher than the cure amount set forth in the applicable Cure and Assignment Notice.

42.     By this Motion, the Debtors also request that the Sale Order provide that the amounts to be set forth on the exhibit to the Cure and Assignment Notice shall constitute the cure payments required under section 365(b) of the Bankruptcy Code for each Executory Contract.

43.     The Debtors respectfully request that the Court approve the assumption by the Debtors of the Executory Contracts and the assignment thereof to the Successful Bidder(s) in accordance with the Purchase Agreement(s).

### E.     Procedures for Obtaining Consent

44.     The transfer of certain of the Assets, including the Debtors' rights under certain agreements, may, under the operative agreements or applicable law, require the consent of certain third parties, including, but not limited to, investors in certain funds managed by the Debtors (the "Consent Parties").  In those instances, within two (2) business days after the conclusion of the Auction, the Debtors will provide notice of the proposed sale to the Successful Bidder(s) and seek consent from the Consent Parties to the transfer of the Debtors' rights under the relevant agreements and the continuation of such agreements.  The Debtors request that the Consent Parties be deemed to have consented to the transfer or assignment if the requisite number of Consent Parties fail to object before the earlier to occur of (i) fifteen (15) days following service of the notice, or (ii) two (2) business days prior to the Sale Hearing, notwithstanding any terms in the operative agreements requiring an affirmative consent from the Consent Parties.  The Debtors request that the Sale Order provide that such contracts may be assigned and/or otherwise transferred to the Successful Bidder(s) notwithstanding any provision

that prohibits, restricts, or conditions assignment or allows the counterparty or any Consent

Parties to terminate, recapture, impose any penalty, or modify any term, upon such assignment.

45.     In the absence of timely objections from the Consent Parties, the Debtors intend

to consummate the proposed transfer of such rights.  If timely objections are received from

Consent Parties such that the actual, deemed, or negative consent of other Consent Parties would

be insufficient to permit transfer of such agreement, the Debtors may, at their discretion but with

the Successful Bidder(s)'s consent, either (a) proceed with the transaction in accordance with the

terms of the applicable Purchase Agreements with the Successful Bidder(s), or (b) proceed with

a modified transaction, excluding the contract which is the subject of the objection.

### F.     The Successful Bidder Is Anticipated to Be a Good Faith Purchaser and Is Entitled to the Full Protection of Section 363(m) of the Bankruptcy Code, and the Transfer of the Assets Does Not Violate Section 363(n)

46.     Section 363(m) of the Bankruptcy Code protects a good-faith purchaser's interest

in property purchased from the debtor notwithstanding that the sale conducted under section

363(b) is later reversed or modified on appeal.  Specifically, section 363(m) provides:

> The reversal or modification on appeal of an authorization under
> subsection (b) or (c) of this section of a sale or lease of property
> does not affect the validity of a sale or lease under such
> authorization to an entity that purchased or leased such property in
> good faith, whether or not such entity knew of the pendency of the
> appeal, unless such authorization and such sale or lease were
> stayed pending appeal.

11 U.S.C, § 363(m).  Section 363(m) fosters the policy of not only affording finality to the

judgment of the bankruptcy court, but particularly to give finality to those orders and judgments

upon which third parties rely.  *In re Chateaugay Corp.*, 1993 U.S. Dist. Lexis 6130 at *9

(S.D.N.Y. 1993) (*citing In re Abbotts Dairies of Penn., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986));

*see also Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) . . .

provides that good faith transfers of property will not be affected by the reversal or modification

on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal"); *In re Stein & Day, Inc.*, 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("pursuant to 11 U.S.C. §363(m), good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal").

47. While the Bankruptcy Code does not define "good faith purchaser," most courts have adopted a traditional equitable definition: "one who purchases the assets for value, in good faith and without notice of adverse claims." *See, e.g., Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 390 (2d Cir. 1997). The Second Circuit has stated that:

> [g]ood faith of a purchaser is shown by the integrity of his conduct during the course of the sale proceedings; where there is a lack of such integrity, a good faith finding may not be made. A purchaser's good faith is lost by 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'

*Id.* (internal citations omitted).

48. The Debtors intend on requesting a finding that each Successful Bidder is a good-faith purchaser entitled to the protections of section 363(m). The Debtors anticipate that the terms and conditions of the Purchase Agreements will be negotiated by the Debtors and the Successful Bidder(s) at arm's length and in good faith and that each such party will be represented by qualified counsel. The Debtors believe that no Successful Bidder will have engaged in any conduct that would indicate or constitute a lack of good faith and each should receive the protections of section 363(m).

## G. The Proposed Notice of Bidding Procedures and Auction Is Appropriate

49. The Debtors believe that they will obtain the maximum recovery for their creditors if the Assets are sold through a well-advertised sale and auction. Under Bankruptcy Rule 2002(a) and (c), the Debtors are required to notify creditors of the proposed sale of the Assets, including a disclosure of the time and place of the Auction, the terms and conditions of

the sale, and the deadline for filing any objections.  The Debtors request notice of the Bidding

Procedures and Auction be deemed adequate and sufficient if, within five (5) days of the entry of

this Order, the Debtors (or their agent):

> (a)    Serve by email, facsimile or first class mail, postage prepaid, copies of (i) the Bidding Procedures Order (without attachments), (ii) the Bidding Procedures (without attachments), and (iii) the Sale Notice, substantially in the form attached hereto as <u>Exhibit D</u>, upon the following entities (collectively, the "<u>Notice Parties</u>"): the Office of the United States Trustee for Region 2, serving the Southern District of New York, counsel to the agent under the Debtors' prepetition secured credit facility, the creditors (excluding insiders) holding unsecured claims on a consolidated basis against the Debtors, the Internal Revenue Service, the United States Securities and Exchange Commission, the United States Attorney's Office, the United States Attorney General, the New York State Attorney General, the New York State Taxing Authority, the New York City Taxing Authority, all other taxing authorities having jurisdiction over any of the Assets, counsel to certain of the Debtors' limited partners, all parties that have requested special notice pursuant to Bankruptcy Rule 2002, all persons or entities known to the Debtors that have or have asserted a lien on, or security interest in, all or any portion of the Assets, all Contract Parties, and all potential bidders previously identified or otherwise known to the Debtors;

> (b)    Publish a notice, substantially in the form of the Sale Notice, in the National Edition of the *Wall Street Journal* and such other publications as the Debtors and their advisors determine will promote the marketing and sale of the Assets to other interested parties whose identities are unknown to the Debtors; and

> (c)    Publish a notice, substantially in the form of the Sale Notice, on the website of the Debtors' claims and noticing agent, Epiq Bankruptcy Solutions LLC, at http://dm.epiq11.com/GSC.

50.    The Debtors submit that the notice procedures herein comply fully with

Bankruptcy Rule 2002 and are reasonably calculated to provide timely and adequate notice of the

Sale to the Debtors' creditors and other parties-in-interest, as well as to those parties who have

expressed an interest, or may express an interest, in bidding on the Assets.

## H.    <u>Relief Under Bankruptcy Rules 6004(h) and 6006(d) Is Appropriate</u>

51.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or

lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the

court orders otherwise."  Additionally, Bankruptcy Rule 6006(d) provides that an "order

authorizing the trustee to assign an executory contract or unexpired lease . . . is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."

52.     Courts in this district and elsewhere have waived these fourteen-day stays upon a showing of business need. *See In re Adelphia Comm. Corp.*, 327 B.R. 143, 175 (Bankr. S.D.N.Y. 2005) ("As I find that the required business need for a waiver has been shown, the order may provide for a waiver of the 10-day waiting period under Fed. R. Bankr. P. 6004(g)."); *In re PSINet Inc.*, 268 B.R. 358, 379 (Bankr. S.D.N.Y. 2001) (requiring demonstration of "a business exigency" for waiver of ten-day stays under Bankruptcy Rules 6004(g) and 6006(d)); *In re Decora Indus., Inc.*, No. 00-4459 JJF, 2002 WL 32332749, at *9 (D. Del. May 20, 2002) ("[T]he Court understands that an immediate closing is required to remedy Debtors' precarious financial and business position.  Accordingly, the Court will waive the Rules 6004(g) and 6006(d), allowing the parties to close.")

53.     To enable them to close on the sale(s) as soon as possible after the Sale Hearing, the Debtors request that any order approving the Purchase Agreements and the assumption and assignment of the Executory Contracts be effective immediately by providing that the 14-day stays under Bankruptcy Rules 6004(h) and 6006(d) be waived.  Imposition of the fourteen-day stays under Bankruptcy Rule 6004(h) and 6006(d) is likely to cause bidders to reduce the value of their bids for the Assets to account for the value that will evaporate during the stay. Therefore, waiver of the fourteen-day stays imposed by Bankruptcy Rules 6004(h) and 6006(d) would help to maximize the value received by the Debtors' estates.

**NOTICE**

54.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee for Region 2, serving the Southern District of New York; (ii) counsel to the agent under

the Debtors' prepetition secured credit facility; (iii) the creditors (excluding insiders) holding unsecured claims on a consolidated basis against the Debtors; (iv) the Internal Revenue Service; (v) the United States Securities and Exchange Commission; (vi) the United States Attorney's Office; (vii) the United States Attorney General; (viii) the New York State Attorney General; (ix) the New York State Taxing Authority; (x) the New York City Taxing Authority; (xi) all other taxing authorities having jurisdiction over any of the Assets; (xii) counsel to certain of the Debtors' limited partners; (xiii) all parties that have requested special notice pursuant to Bankruptcy Rule 2002; (xiv) all persons or entities known to the Debtors that have or have asserted a lien on, or security interest in, all or any portion of the Assets; (xv) all Contract Parties; and (xvi) all potential bidders previously identified or otherwise known to the Debtors.

55.     In light of the nature of the relief requested herein, the Debtors submit that no other or further notice of this Motion is necessary or required.

56.     A copy of this motion is also available on the website of the Debtors' notice and claims agent, Epiq Bankruptcy Solutions LLC, at http://dm.epiq11.com/GSC.

57.     No previous request for the relief sought herein has been made.


*[Remainder of page has been left intentionally blank]*

WHEREFORE, the Debtors request that the Court (i) at the conclusion of the initial hearing, enter the Bid Procedures Order, *inter alia*, approving (a) the Bidding Procedures, (b) the form and manner of the Sale Notice and (c) procedures for determining cure amounts, (ii) at the conclusion of the Sale Hearing, enter the Sale Order or Sale Orders to be provided by the Debtors, *inter alia*, authorizing the sale of the Assets to the Successful Bidder(s) that submits the highest and/or best offer for the Assets in accordance with the Bidding Procedures, and (iii) grant the Debtors such other relief as the Court may deem just and proper..

Dated: September 1, 2010
   New York, New York

        Respectfully submitted,

        **GSC GROUP, INC., ET AL.**

        KAYE SCHOLER LLP


        By: /s/ Michael B. Solow
        Michael B. Solow
        Seth J. Kleinman
        425 Park Avenue
        New York, NY 10022
        Telephone: (212) 836-8000
        Facsimile: (212) 836-8689

        -and-

        D. Tyler Nurnberg (*pro hac vice* pending)
        Matthew J. Micheli (*pro hac vice* pending)
        70 West Madison Street, Suite 4100
        Chicago, IL 60602
        Telephone: (312) 583-2300
        Facsimile: (312) 583-2360

        Proposed Attorneys for the Debtors and Debtors-in-Possession