James H.M. Sprayregen, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

and

David L. Eaton (admitted *pro hac vice*)
Jeffrey D. Pawlitz (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654-3406
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Counsel to Versa Capital Management, Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| GSC Group, Inc., *et al.*,[1] | ) Case No. 10-14653 (AJG) |
| Debtors. | ) Jointly Administered |

**JOINDER TO PRELIMINARY OBJECTION OF NON-CONTROLLING
LENDER GROUP TO DEBTORS' MOTION FOR ENTRY OF AN ORDER
AUTHORIZING (A) SALE OF ASSETS FREE AND CLEAR OF
LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, AND
(B) ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS**

Versa Capital Management, Inc. ("Versa") hereby files this joinder (the "Joinder") to the

*Preliminary Objection of Non-Controlling Lender Group to Debtors' Motion For Entry of an*

*Order Authorizing (A) Sale or Assets Free and Clear of Liens, Encumbrances and Other*

---

[1] The Debtors, along with the last four digits of each Debtor's federal tax identification number, are: GSC Group, Inc. (6382); GSCP, LLC (6520); GSC Active Partners, Inc. (4896); GSCP (NJ), Inc. (3944); GSCP (NJ) Holdings, L.P. (0940); GSCP (NJ), L.P. (0785); and GSC Secondary Interest Fund, LLC (6477).

1

*Interests, and (B) Assumption and Assignment of Executory Contracts* [Docket No. 220] (the "Non-Controlling Lender Group Objection").

**Objection**

1. As set forth in the Non-Controlling Lender Group Objection, because of the actions of BDCM[2] (through their undue control or otherwise being enabled by the above-captioned debtors (the "Debtors")), the values bid at the auction, which concluded on October 29, 2010 (the "Auction"), were artificially depressed and did not yield the highest and best result for the Debtors' estates. As a result, BDCM now stands to acquire the most valuable assets of the Debtors' estates for a mere $11 million (only $5 million of which is to be provided in cash) (the "BDCM Bid"), notwithstanding that numerous bidders, including Versa, stand ready to provide the estate with significantly more cash and total consideration for those same assets.

2. As this Court and all parties involved in these chapter 11 cases are well aware, BDCM stands in a unique position in this proceeding given that its affiliate, Black Diamond Commercial Finance, L.L.C. (the "Black Diamond Agent") serves, among other things, as the administrative agent under the Debtors' prepetition credit agreement. Indeed, the BDCM Bid became meaningful only after it was coupled with a credit bid by the Black Diamond Agent (acting at BDCM's direction) in the amount of $225 million for other Lots (the "BD Agent Bid," and together with the BDCM Bid, the "BD Joint Bid").

3. Courts should not condone collusive behavior that controls the amount that can be bid at an auction. It is not uncommon for a majority lender to direct a credit bid of the agent for ***all*** assets that the lender group intends to bid upon. However, it was improper for BDCM *qua* bidder to force the Black Diamond Agent to refuse to combine the BD Agent Bid simply to

---

[2] "BDCM" refers to GSC Acquisition Partners, LLC and any other Lenders under the Prepetition Credit Agreement that are affiliates of Black Diamond Capital Management, L.L.C.

enable BDCM to acquire valuable assets at a depressed price, to the detriment of the Debtors' estates. There is simply *no good faith* reason to for the Black Diamond Agent to refuse to combine the BD Agent Bid with those of other bidders *other than the fact that BDCM and the Black Diamond Agent were engaged in collusive behavior* to the direct detriment of the Debtors' estates. As stated at the November 1 hearing, other bidders were willing to bid a substantial amount more for the same assets that BDCM offered $11 million in its BDCM Bid. Because the Black Diamond Agent (at the direction of BDCM) refused to partner with any competing bidders, however, those substantially higher and better bids ultimately fell to the wayside. The ability to direct an agent to credit bid is not a license to abrogate the requirements of the Bankruptcy Code.

4. While the Debtors point to the final bid amount of $235 million as evidence of a successful auction, they disregard the fact that, had the bidding for assets subject to the BDCM Bid not been artificially low on account of the BD Agent Bid, the bidding for the Debtors' assets as a whole would have been substantially higher. As indicated at the November 1 hearing, the Debtors' estates may realize substantially more total consideration over and above that currently contemplated by the BDCM Bid if the auction is reopened so that bidders can bid on assets subject to the BDCM Bid.[3] Moreover, because all parties involved already have conducted the necessary due diligence, Versa submits that any delay on account of the reopening of the auction would be minimized.

---

[3] Hr'g. Tr. at 14:25-15:3, *In re GSC Group, Inc.*, No. 10-14653 (AJG) (Bankr. S.D.N.Y. November 1, 2010). For the convenience of the Court, a copy of the relevant pages is attached hereto as **Exhibit A**.

3

WHEREFORE, Versa joins the Non-Controlling Lender Group Objection and requests that this Court deny the sale of the Debtors' assets pursuant to the BD Joint Bid, reject any finding of good faith in favor of either BDCM or the Black Diamond Agent, and reopen the auction to bid on assets subject to the BDCM Bid (to be coupled with the BD Agent Bid), or, in the alternative, to the extent the Court determines appropriate, reopen the auction for all assets without allowing the Black Diamond Agent to credit bid.

New York, New York
Dated: November 29, 2010

*/s/ James H.M. Sprayregen, P.C.*
James H.M. Sprayregen, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

and

David L. Eaton (admitted *pro hac vice*)
Jeffrey D. Pawlitz (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654-3406
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Counsel to Versa Capital Management, Inc.

**Exhibit A**

K&E 18062744.3

1  Your Honor. But if it was a melting ice cube then it's going

2  to be melted by December 6th; by the time the sale hearing

3  occurs.

4        And so, Your Honor, our position here is that the

5  debtors have admitted and said it's a melting ice cube. Black

6  Diamond said it's a melting ice cube. We think this has to be

7  heard immediately to preserve value for the estate.

8        And in that respect, Your Honor, we have -- there are

9  several bidders who are still interested in bidding on the

10 assets. And they're lined up and we believe that they'd still

11 be willing to participate on the terms that they proposed on

12 Thursday evening.

13       Now, if you wait and delay in --

14       THE COURT: All right, let's move away from delay for

15 a minute.

16       MR. HAMMOND: Okay.

17       THE COURT: Explain to me in your view how this

18 impacts the estate?

19       MR. HAMMOND: Well, Your Honor, I think there's a

20 couple of issues in terms of how it impacts the estate. But if

21 you just looked at it from the agent submitting a credit bid,

22 the agent was willing to credit bid 220 million dollars for

23 assets that we believe are worth far less than that. If the

24 agent was willing to -- wanted to preserve the value of those

25 assets, that's fine. But then on the other side of the

1  equation the assets that Black Diamond wants to keep for itself
2  others have bid 111 million dollars for. And they're proposing
3  to pay eleven million dollars for those assets. And Black
4  Diamond refuses to participate with any oth -- refuses to allow
5  the agent to bid with any other party other than itself.
6  　　　　　And so if that restriction was removed, Your Honor,
7  you could enhance the value of the assets from the 231 million
8  some odd dollars, ball park, that is currently on the table.
9  You could increase that value to over 300 million dollars. So
10 that's how it's impacting the estate here.
11 　　　　　And, moreover, Your Honor, the credit --
12 　　　　　THE COURT: So you're assuming under those
13 circumstances that the credit bid of 200 million that you
14 believe is overvalued would remain?
15 　　　　　MR. HAMMOND: If Black Diamond agent was interested in
16 preserving the value of assets, that we don't think has 200
17 million dollars worth of value, but assuming on the face that
18 that was a good faith bid, Your Honor, and it wanted to protect
19 those assets from being stolen by some third party creditor, it
20 would keep that bid in place and allow a competitive auction on
21 the assets that we think have real value, and that the other
22 bidders in the auction are truly interested in. And you would
23 maximize the value for the estate if you did that.
24 　　　　　THE COURT: All right. Now, do you independently
25 believe that whether this gets heard this week or next has any