**Hearing Date:  December 15, 2010 at 10:00 a.m. (prevailing Eastern Time)**
**Objection Deadline:  December 10, 2010 at 4:00 p.m. (prevailing Eastern Time)**

KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
Telephone:  (212) 836-8000
Facsimile:  (212) 836-8689
Michael B. Solow
Seth J. Kleinman

-and-

70 West Madison Street, Suite 4100
Chicago, IL 60602
Telephone:  (312) 583-2300
Facsimile:  (312) 583-2360
D. Tyler Nurnberg
Matthew J. Micheli

Attorneys for Debtors
and Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GSC GROUP, INC., <u>et al</u>.,[1] | ) | Case No. 10-14653 (AJG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF DEBTORS' AMENDED MOTION PURSUANT TO BANKRUPTCY RULE 9019 FOR APPROVAL OF AMENDED SETTLEMENT WITH ALFRED C. ECKERT III

       **PLEASE TAKE NOTICE** that on November 19, 2010, the Debtors filed the Debtors' Motion Pursuant to Bankruptcy Rules 9019 For Approval of Settlement with Alfred C. Eckert III [Docket No. 210] (the "<u>Motion</u>").

---

[1]      The Debtors along with the last four digits of each Debtor's federal tax identification number are GSC Group, Inc. (6382), GSCP, LLC (6520), GSC Active Partners, Inc. (4896), GSCP (NJ), Inc. (3944), GSCP (NJ) Holdings, L.P. (0940),  GSCP (NJ), L.P. (0785), and GSC Secondary Interest Fund, LLC (6477).

**PLEASE TAKE FURTHER NOTICE** of the attached Amended Motion Pursuant to Bankruptcy Rules 9019 For Approval of Amended Settlement with Alfred C. Eckert III (the "Amended Motion"). The Amended Motion amends the relief sought in the Motion as set forth therein. The Hearing on the Amended Motion (the "Hearing") remains on **December 15, 2010, at 10:00 a.m. (prevailing Eastern Time)** at the Bankruptcy Court, One Bowling Green, New York, New York 10004-1408 before the Honorable Arthur J. Gonzalez, Chief United States Bankruptcy Judge for the Bankruptcy Court for the Southern District of New York (the "Court")

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Amended Motion shall (i) be in writing, (ii) conform to the Federal Rules of Bankruptcy Procedure, the Local Rules of the Bankruptcy Court for the Southern District of New York and the Order Implementing Certain Notice and Case Management Procedures [Docket No. 30] (the "Case Management Order"), (iii) set forth the name of the objecting party, the basis for the objection and the specific grounds thereof and (iv) be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to the chambers of the Honorable Arthur J. Gonzalez), and shall be served upon: (a) Kaye Scholer LLP, 70 W. Madison Street, Suite 4100, Chicago, Illinois 60602, Attn: D. Tyler Nurnberg and Matthew J. Micheli, attorneys for the Debtors, (b) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Andrea B. Schwartz, Esq., (c) the parties on the Master Service List (as defined in the Case Management Order), (d) Riker Danzig Scherer Hyland Perretti LLP, Headquarters Plaza, One Speedwell Avenue, Morristown, New Jersey, 07962, Attn: Michael K. Furey, attorney for Alfred C. Eckert III, and (e) any other parties affected by this Motion, so as to be filed and **received** by no later than **December 10, 2010, at 4:00 p.m.** (the "Objection Deadline").[2]

**PLEASE TAKE FURTHER NOTICE** that if an objection to the Amended Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

*[Remainder of page left blank intentionally]*

---

[2]      Copies of the Motion, the Case Management Order and all pleadings and other papers filed in these chapter 11 cases may be obtained, free of charge, at: http://dm.epiq11.com/GSCGroup.

Dated:    December 3, 2010
          New York, New York

Respectfully submitted,

**GSC GROUP, INC., ET AL.,**

KAYE SCHOLER LLP

By:  _/s/ Michael B. Solow_
Michael B. Solow
Seth J. Kleinman
425 Park Avenue
New York, NY 10022
Telephone:  (212) 836-8000
Facsimile:  (212) 836-8689

-and-

D. Tyler Nurnberg
Matthew J. Micheli
70 West Madison Street, Suite 4100
Chicago, IL 60602
Telephone:  (312) 583-2300
Facsimile:  (312) 583-2360

Attorneys for the Debtors
and Debtors-in-Possession

Hearing Date:  December 15, 2010 at 10:00 a.m. (prevailing Eastern Time)
Objection Deadline:  December 10, 2010 at 4:00 p.m. (prevailing Eastern Time)

KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
Telephone:  (212) 836-8000
Facsimile:  (212) 836-8689
Michael B. Solow
Seth J. Kleinman

-and-

70 West Madison Street, Suite 4100
Chicago, IL 60602
Telephone:  (312) 583-2300
Facsimile:  (312) 583-2360
D. Tyler Nurnberg
Matthew J. Micheli

Attorneys for Debtors
and Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GSC GROUP, INC., et al.,[1] | ) | Case No. 10-14653 (AJG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' AMENDED MOTION PURSUANT TO BANKRUPTCY RULE 9019**
**FOR APPROVAL OF AMENDED SETTLEMENT WITH ALFRED C. ECKERT III**

GSC Group, Inc. ("GSC Group") and certain of its direct or indirect subsidiaries

and affiliates (collectively, the "Debtors", and together with their non-debtor affiliates, "GSC")

hereby file this motion (this "Motion") for the entry of an order, substantially in the form

---

[1]    The Debtors along with the last four digits of each Debtor's federal tax identification number are GSC
Group, Inc. (6382), GSCP, LLC (6520), GSC Active Partners, Inc. (4896), GSCP (NJ), Inc. (3944), GSCP
(NJ) Holdings, L.P. (0940),  GSCP (NJ), L.P. (0785), and GSC Secondary Interest Fund, LLC (6477).

attached hereto as <u>Exhibit A</u>, (a) approving the Debtors' entry into a proposed settlement

agreement (the "<u>Settlement Agreement</u>"),[2] a copy of which is attached to the order as <u>Schedule</u>

<u>1</u>, with GSC's Chairman and CEO, and Alfred C. Eckert III ("<u>Mr. Eckert</u>"), and (b) granting

such other relief as is just and proper.  In support of this Motion, the Debtors respectfully state as

follows:

## <u>JURISDICTION AND VENUE</u>

1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157

and 1334.  Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3.      The statutory bases for the relief requested herein are Rule 9019 of the

Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and section 363(b) of the

Bankruptcy Code.

## <u>BACKGROUND</u>

4.      On August 31, 2010 (the "<u>Petition Date</u>"), each of the Debtors filed a

voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code.

5.      The Debtors are operating their businesses and managing their properties

as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      No trustee, examiner, or committee has been appointed.

7.      The Debtors are in the midst of selling substantially all of GSC's assets.

On September 23, 2010, the Court entered the Order Approving (A) Bidding Procedures, (B)

Form and Manner of Notice of Sale, and (C) Assumption and Assignment Procedures (the "<u>Bid</u>

<u>Procedures Order</u>") [Docket No. 134].  The Debtors conducted an auction (the "<u>Auction</u>") on

---

[2]      Capitalized terms used but not otherwise defined herein have the definition ascribed to such terms in the
Settlement Agreement.

October 26, 2010 through October 29, 2010.  The prevailing bid was a combination credit and

cash bid to acquire substantially all of GSC's assets submitted by Black Diamond Commercial

Finance, LLC, as agent (the "Agent") for the Debtors' prepetition lenders, together with one of

its affiliates, Black Diamond Capital Management, LLC (with the Agent, the "Purchaser").  The

Purchaser's prevailing bid has a combined value of $235 million.

8.      The sale of GSC's rights under certain management, advisory or sub-

advisory, or collateral monitoring agreements (collectively, the "Management Agreements") may

require the consent of investors and other parties under the terms of the operative agreements and

applicable law.  GSC is in the process of soliciting consents from potential required parties to

GSC's transfer of its rights under the Management Agreements to the Purchaser.  Specifically,

such rights are held by debtor GSCP (NJ) L.P., which, in turn, is owned by GSC Group.

9.      The hearing for this Court to consider approval of the proposed sale to

Purchaser is scheduled to commence on December 6, 2010.

10.     Additional information about the Debtors' businesses, prepetition capital

structure and circumstances leading to the chapter 11 filings are set forth in the Declaration of

Peter R. Frank in Support of Chapter 11 Petitions and First Day Orders [Docket No. 9].

## RELEVANT BACKGROUND

**A.      Relevant Life Insurance Policies**

11.     One of the lots of assets initially offered for sale at the Auction was GSC's

rights, as beneficiary, under several life insurance policies relating to Mr. Eckert, which have a

combined face amount of $50,000,000 (the "Policies").  *See* Schedule B.9, Schedules of Assets

and Liabilities for GSCP (NJ), L.P. [Docket No. 88].  Prior to the Auction, GSC asked Mr.

Eckert to agree to make certain of his confidential medical records (the "Records") available to

potential bidders looking to evaluate and potentially make an offer to purchase GSC's rights

under the Policies.  Mr. Eckert advised GSC that he will only consent to making the Records

available to potential bidders if done on a confidential basis and GSC commits to pay him one-

third of the gross proceeds from any sale of GSC's rights under the Policies.

12.     GSC believes that that there is a fluid market in which to sell GSC's rights

under the Policies.  Prior to the Auction, GSC's advisors conferred with a number of potential

bidders with substantial experience purchasing and selling the rights to life insurance policies,

who advised that any serious bidder will need access to the Records to make any sort of

meaningful offer.  GSC is informed and believes that under applicable law the Records cannot be

disclosed without Mr. Eckert's consent.

13.     As of the October 22, 2010 deadline for bids for GSC's assets, GSC had

not received any meaningful offers for its rights under the Policies, which, combined with the

feedback above from potential bidders, led GSC to determine to pull such assets from the

Auction and reopen discussions with Mr. Eckert in an effort to obtain access to the Records.

**B.**     **Mr. Eckert's Ownership and Control of GSC Group**

14.     Mr. Eckert is founder of GSC, Chairman, Chief Executive Officer and a

Director of the parent company, GSC Group, and an officer and director of all or most of GSC

Group's direct and indirect Debtor and non-Debtor affiliates.  Mr. Eckert owns or controls,

directly or indirectly, a substantial amount of shares (the "Shares") in several series of common

stock issued by GSC Group.

15.     If GSC does not close the sale of one or more of the Management

Agreements, the Debtors may seek to continue performing under the non-transferred

Management Agreements, through a confirmed plan of reorganization or otherwise.  In that

situation, one avenue GSC may pursue in an effort to avert a potential "change of control" under

applicable non-bankruptcy law, which could require additional consents to the transfers, could involve Mr. Eckert preserving his ownership and/or control, directly or indirectly, of the Shares.

## C.    Mr. Eckert's Non-Recourse Note

16.    GSC and Mr. Eckert are party to that certain promissory note dated as of July 15, 2008 (as may be amended from time to time, the "Non-Recourse Note"), pursuant to which GSC made a non-recourse loan to Mr. Eckert which, as of October 31, 2010, had a balance of $168,917, consisting of principal and accrued interest.

## THE SETTLEMENT AGREEMENT

17.    On November 19, 2010, GSC and Mr. Eckert entered into the Settlement Agreement, subject to among other things, approval by this Court.  Upon further review and negotiation between GSC and Mr. Eckert, the Settlement Agreement was amended to reduce the upfront cash payment to Mr. Eckert by $500,000 in return for Mr. Eckert's preservation of his scheduled unsecured claim against GSC.  The other salient terms of the Settlement Agreement remain the same and are set forth below:[3]

>    a.    For the period from the Closing Date through closing of the sale of all of the Management Agreements, or such other date as may be agreed to in writing by the Debtors and Mr. Eckert, Mr. Eckert shall continue to hold, and not sell, divest, transfer or otherwise pledge or encumber, the Shares.  For so long as he owns or controls the Shares, Mr. Eckert agrees to cooperate fully with any efforts by GSC to avert a "change of control" of GSC Group or GSCP (NJ) L.P. that might trigger a need for additional consents under applicable non-bankruptcy law; provided, however, that Mr. Eckert will be required to provide such cooperation only to the extent not inconsistent with his obligations as a fiduciary of GSC.

>    b.    Upon the Closing Date, GSC shall be authorized to provide the Records to potential bidders who agree to sign a customary non-

---

[3]    The following is a summary of certain key terms of the Settlement Agreement provided for convenience purposes only, and should not be construed to modify or amend such agreement. The actual terms of the Settlement Agreement govern the terms of the settlement of claims among the Parties.

disclosure agreement. Mr. Eckert agrees to cooperate fully with GSC's efforts to sell its rights under the Policies.

c.     Effective as of the Closing Date, the Non-Recourse Note will be deemed satisfied in full and GSC will irrevocably waive, release and forever discharge any claim that it may have related to the Non-Recourse Note.

d.     Upon the Closing Date, for and in consideration of the above, the Debtors shall pay Mr. Eckert the sum of $1,000,000.

Each Party is agreeing to bear its own attorneys' fees and any and all costs and expenses relating to the negotiation and preparation of the Settlement Agreement.

## RELIEF REQUESTED

18.     By this Motion, pursuant to Bankruptcy Rule 9019 and section 363(b) of the Bankruptcy Code, the Debtors seek approval of the Settlement Agreement between GSC and Mr. Eckert and authority to implement its terms.

## STANDARD OF REVIEW

19.     Bankruptcy Rule 9019(a) provides that, "[o]n motion by the [debtor-in possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed R. Bankr. P. 9019(a). Bankruptcy courts are authorized to approve compromises "if they are in the best interests of the estate." *Vaughn v. Drexel Burnham Lambert Group, Inc.* (*In re Drexel Burnham Lambert Group, Inc.*), 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); *see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Fisher v. Pereira* (*In re 47-49 Charles St., Inc.*), 209 B.R. 618, 620 (S.D.N.Y. 1997); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994). Indeed, courts have long considered compromises to be "a normal part of the process of reorganization." *TMT Trailer Ferry*, 390 U.S. at 424 (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)). Moreover, "compromises are favored in bankruptcy

because they minimize the costs of litigation and further the parties' interest in expediting the administration of a bankruptcy estate." *Inves. Exch. Group, LLC v. Colo. Capital Bank (In re 1031 Tax Group, LLC)*, Case No. 07-11448, 2007 Bankr. LEXIS 4690, at *8 (S.D.N.Y. 2007); *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996).

20.     The decision to approve a particular compromise lies within the sound discretion of the bankruptcy court. *Vaughn*, 134 B.R. 499, 505. The settlement need not result in the best possible outcome for the debtor, however it must not "fall below the lowest point of reasonableness." *Official Comm. of Unsecured Creditors of Tower Auto. v. Debtors & Debtors in Possession (In re Tower Auto. Inc.)*, 241 F.R.D. 162 at 170 (S.D.N.Y 2006); *Drexel Burnham Lambert Group*, 134 B.R. *at* 505; *see also Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997). Additionally, a court may exercise its discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998). However, the analysis must focus on the question of whether a particular compromise is "fair and equitable, and be in the best interest of the estate." *In re Best Products*, 168 B.R. 35, 50 (Bankr. S.D.N.Y. 1994) (internal citations omitted).

21.     While a court must evaluate "all . . . factors relevant to a fair and full assessment of the wisdom of the proposed compromise," *TMT Trailer Ferry*, 390 U.S. at 424, a court need not conduct a "mini-trial" of the merits of the claims being settled, *In re W.T. Grant Co.*, 699 F.2d at 608, or conduct a full independent investigation. *In re Adelphia Communs. Corp.*, 327 B.R. 143 *at* 159 (Bankr. S.D.N.Y. 2005); *Drexel Burnham Lambert Group*, 134 B.R. at 505. "[T]he bankruptcy judge does not have to decide the numerous questions of law and fact," *Nellis*, 165 B.R. at 123 (internal citations omitted); rather, the Court need only "canvass

the issues raised by the parties and decide whether a proposed settlement falls below the lowest point in the range of reasonableness." *In re Stone Barn Manhattan*, 405 B.R. 68, at 75 (Bankr. S.D.N.Y. 2009); *Nellis*, 165 B.R. at 123; *see also In re Teltronics Servs., Inc.*, 762 F.2d 185, 189 (2d Cir. 1985) ("the responsibility of the bankruptcy judge . . . is not to decide the numerous questions of law and fact raised by appellants but rather to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness.") (internal quotes omitted).

22.     The court may give weight to the "informed judgments of the … debtor-in-possession and their counsel that a compromise is fair and equitable, and consider the competency and experience of counsel who support the compromise." *Drexel Burnham Lambert Group*, 134 B.R. *at* 505 (internal citations omitted); *see also JPMorgan Chase Bank, N.A. v. Charter Communs. Operating, LLC (In re Charter Communs.)*, Case No. 09-11435, 2009 Bankr. LEXIS 3609, *at* *71 (Bankr. S.D.N.Y. 2009) ("And while the approval of a settlement rests in the court's sound discretion, the debtor's business judgment should not be ignored."); accord *In re Ashford Hotels Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for the Trustee's, but only that I test his choice for reasonableness . . . . If the Trustee chooses one of two reasonable choices, I must approve that choice, even if, all things being equal, I would have selected the other.").

23.     Notably, there is no requirement that "the value of the compromise . . . be dollar-for-dollar the equivalent of the claim." *Ionosphere Clubs, Inc.*, 156 B.R. at 427.  Instead, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id.* at 427-28 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)).

## BASIS FOR RELIEF

24.     The Settlement Agreement is a sound exercise of the Debtors' business

judgment and will benefit the Debtors' estates and their creditors for reasons that include:

a.     Mr. Eckert's agreement to provide the Records and cooperate with GSC's efforts to sell its rights under the Policies will assist the Debtors in maximizing its recovery for those assets.  The Debtors believe that without the Records and Mr. Eckert's general cooperation, any bids with respect to the Policies will be substantially below market.  The increase in the purchase price for the Policies, if the requested relief is approved, is anticipated to be substantially greater than the price that could be obtained without the Records.  As such, the proposed payment to Mr. Eckert will result in a net benefit to the Debtors' estates.

b.     In addition, to the extent that certain of the Debtors' assets are not transferred in the sale process, Mr. Eckert's agreement to preserve his ownership and/or control of GSC Group gives the Debtors a potential means to avoid a "change of control" that could trigger a requirement of additional consents, which would effectively block the transfer of such assets.  The Settlement Agreement may give the Debtors additional options regarding non-transferred assets, preserving value for the Debtors' estates.

c.     The settlement of the Non-Recourse Note eliminates the prospect of potential litigation between the Debtors and Mr. Eckert, which will preserve estate resources and allow the Debtors, their professionals and management team to focus on the sale process.

25.     The Debtors' determination to enter into the Settlement Agreement is a

sound exercise of their business judgment and the Settlement Agreement is fair and equitable and

falls well above the lowest point in the range of reasonableness.  As such, the Court should

approve the Settlement Agreement pursuant to Bankruptcy Rule 9019.

## NOTICE AND PRIOR MOTIONS

26.     Pursuant to and in accordance with the Order Implementing Certain

Notice and Case Management Procedures [Docket No. 30] (the "Case Management Order"),

notice of this Motion has been provided to the Master Service List and Mr. Eckert.

27.    In light of the nature of the relief requested herein, the Debtors submit that no other or further notice of this Motion is necessary or required.

28.    The relief sought herein amends the relief sought by the Debtors in their original motion filed on November 19, 2010.

[*The remainder of the page is left blank intentionally*

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (i) enter an order, substantially in the form annexed hereto as <u>Exhibit A</u>, approving the Settlement Agreement (as amended) and authorizing the Debtors to implement its terms, and (ii) grant such other and further relief as is just and proper.

Dated:   December 3, 2010
       New York, New York

<div style="margin-left:40%">

Respectfully submitted,
**GSC GROUP, INC., ET AL.,**

KAYE SCHOLER LLP

By:  */s/ Michael B. Solow*
Michael B. Solow
Seth J. Kleinman
425 Park Avenue
New York, NY 10022
Telephone:  (212) 836-8000
Facsimile:  (212) 836-8689

-and-

D. Tyler Nurnberg
Matthew J. Micheli
70 West Madison Street, Suite 4100
Chicago, IL 60602
Telephone:  (312) 583-2300
Facsimile:  (312) 583-2360

Attorneys for the Debtors
and Debtors-in-Possession

</div>

# EXHIBIT A

## Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| GSC GROUP, INC., <u>et al</u>.,[1] | ) | Case No. 10-14653 (AJG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## ORDER PURSUANT TO BANKRUPTCY RULE 9019 APPROVING
## SETTLEMENT AGREEMENT WITH ALFRED C. ECKERT III

Upon the motion (the "<u>Motion</u>")[2] of GSC Group, Inc. and certain of its direct or

indirect subsidiaries and affiliates (collectively, the "<u>Debtors</u>")  for the entry of an order (a)

approving the Debtors' entry into the Settlement Agreement, and (b) granting such other relief as

is just and proper; and the Court having found that it has jurisdiction over this matter pursuant to

28 U.S.C. § 1334; and the Court having found that the Motion is a core proceeding pursuant to

28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Motion

in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found

that the relief requested in the Motion is in the best interests of the Debtors' estates, their

creditors and other parties in interest; and notice of the Motion appearing adequate and

appropriate under the circumstances; and the Court having found that no other or further notice

need be provided; and the Court having reviewed the Motion; and the Court having determined

that the legal and factual bases set forth in the Motion establish just cause for the relief granted

---

[1]     The Debtors along with the last four digits of each Debtor's federal tax identification number are GSC
Group, Inc. (6382), GSCP, LLC (6520), GSC Active Partners, Inc. (4896), GSCP (NJ), Inc. (3944), GSCP
(NJ) Holdings, L.P. (0940),  GSCP (NJ), L.P. (0785), and GSC Secondary Interest Fund, LLC (6477).

[2]     All capitalized terms used by otherwise not defined herein shall have the meanings set forth in the Motion.

Eckert Amended Motion.DOCX

herein; and any objections to the relief requested herein having been withdrawn or overruled on

the merits; and after due deliberation and sufficient cause appearing, it is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

1.     The Motion is granted to the extent provided herein.

2.     Pursuant to Bankruptcy Rule 9019, the Settlement Agreement attached

hereto as <u>Schedule 1</u> is hereby approved in its entirety.

3.     The Parties to the Settlement Agreement are authorized to execute,

deliver, implement and fully perform any and all obligations, instruments, documents and papers

and to take any and all actions reasonably necessary or appropriate to consummate the

Settlement Agreement and perform any and all obligations contemplated therein.

4.     Notwithstanding the possible applicability of Bankruptcy Rule 6004(h),

the terms and conditions of this Order shall be immediately effective and enforceable upon its

entry.

5.     This Court retains jurisdiction with respect to all matters arising from or

related to the implementation of this Order.


New York, New York
Dated:  _____, 2010

_____
                        Chief United States Bankruptcy Judge

# SCHEDULE 1

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made as of December__, 2010, by and between GSC Group, Inc., debtor in possession, on behalf of itself and its direct and indirect debtor and non-debtor affiliates (collectively, "GSC") and Alfred C. Eckert III ("Mr. Eckert").

## RECITALS

A.    WHEREAS, GSC is engaged in the business of providing investment management services for roughly 30 private equity, distressed debt, mezzanine loan and CLO/CDO funds that, as of March 31, 2010, had $8.4 billion of assets under management;

B.    WHEREAS, Mr. Eckert is the founder of GSC, is Chairman, Chief Executive Officer and a Director of the parent company, GSC Group, Inc., and is an officer and director of all or most of GSC Group, Inc.'s direct and indirect Debtor and non-Debtor affiliates;

C.    WHEREAS, on August 31, 2010 (the "Petition Date"), GSC Group, Inc., GSCP, LLC, GSC Active Partners, Inc., GSCP (NJ), Inc., GSCP (NJ) Holdings, L.P., GSCP (NJ), L.P. and GSC Secondary Interest Fund, LLC (each a "Debtor" and, collectively, the "Debtors") filed petitions for relief under chapter 11 of the United States Bankruptcy Code, commencing cases jointly administered in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") sub nom. In re GSC Group, Inc., et al., No. 10-14653 (AJG);

D.    WHEREAS, the Debtors continue to operate their business and manage their properties as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code;

E.    WHEREAS, the Debtors are selling substantially all of GSC's assets pursuant to bidding procedures approved by the Bankruptcy Court by order dated September 23, 2010;

F.    WHEREAS, on October 29, 2010, GSC completed a four-day auction (the "Auction"), at the conclusion of which the prevailing bid was a combination cash and credit bid to purchase substantially all of GSC's assets submitted jointly by Black Diamond Commercial Finance, LLC, as agent (the "Agent") for the lenders from time to time party to that certain fourth amended and restated credit agreement dated as of February 28, 2007, and one of its affiliates, Black Diamond Capital Management, LLC (with the Agent, "Black Diamond");

G.    WHEREAS, the sale of its rights under certain management, advisory or sub-advisory, or collateral monitoring agreements (collectively, the "Management Agreements") may require the consent of investors and other parties under the terms of the operative agreements and applicable law, and GSC is in the process of soliciting consents from potential required parties to GSC's transfer of its rights under the Management Agreements to Black Diamond;

H.    WHEREAS, GSC's rights under the Management Agreements are held by debtor GSCP (NJ) L.P. (the "Manager"), which, in turn, is owned by GSC Group, Inc.

I.    WHEREAS, Mr. Eckert owns or controls, directly or indirectly, a substantial amount of shares (the "Shares") in several series of common stock issued by GSC Group, Inc.,

J.      WHEREAS, if GSC does not close the sale of one or more of the Management Agreements, the Debtors may seek to continue performing under one or more of the non-transferred Management Agreements, through a confirmed plan of reorganization or otherwise, in which event one avenue GSC may pursue in an effort to avert a potential "change of control," which could require additional consents under the operative agreements, could involve Mr. Eckert preserving his ownership and/or control, directly or indirectly, of the Shares;

K.      WHEREAS, one of the lots of assets initially offered for sale at the Auction was GSC's rights, as beneficiary, under the several life insurance policies relating to Mr. Eckert listed on Exhibit A hereto, which have a combined face amount of $50,000,000 (the "Policies");

L.      WHEREAS, prior to the Auction, GSC asked Mr. Eckert to agree to make certain of his confidential medical records (the "Records") available to potential bidders looking to evaluate and potentially make an offer to purchase GSC's rights under the Policies;

M.      WHEREAS, GSC is informed and believes that, without Mr. Eckert's consent, the Records cannot be disclosed to potential bidders under applicable non-bankruptcy law;

N.      WHEREAS, Mr. Eckert advised GSC that he will only consent to making the Records available to potential bidders if done on a confidential basis and GSC commits to pay him one-third of the gross proceeds from any sale of GSC's rights under the Policies;

O.      WHEREAS, GSC is informed and believes that that there is a fluid market in which to sell GSC's rights under the Policies and, prior to the Auction, GSC's advisors conferred with a number of potential bidders with substantial experience purchasing and selling the rights to life insurance policies, who advised that any serious bidder will need access to the Records to make any sort of meaningful offer to purchase GSC's rights under the Policies;

P.      WHEREAS, as of the October 22, 2010 deadline for bids for GSC's assets, GSC had not received any meaningful offers for its rights under the Policies, which, combined with the feedback above from potential bidders, led GSC to determine to pull such assets from the Auction and reopen discussions with Mr. Eckert in an effort to obtain access to the Records;

Q.      WHEREAS, GSC and Mr. Eckert are party to that certain Promissory Note dated as of July 15, 2008 (as may be amended from time to time, the "Non-Recourse Note"), pursuant to which GSC made a non-recourse loan to Mr. Eckert which, as of October 31, 2010, had a balance of $168,917 (including principal and accrued interest).

R.      WHEREAS, GSC and Mr. Eckert wish to enter into a definitive agreement to compromise, settle and resolve various issues on the terms and conditions below; and

NOW, THEREFORE, for and in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the undersigned parties (each a "Party" and, collectively, "Parties") agree as follows:

1.      Bankruptcy Court Approval Required.  This Agreement is subject to approval by the Bankruptcy Court.  The Debtors will file a motion (the "Motion") with the Bankruptcy Court

seeking approval of this Agreement and authority to implement its terms and consummate the transactions contemplated hereby.

2.    <u>Payment Amount</u>.  Upon the Closing Date, in exchange for the agreements, covenants and other consideration set forth herein, the Debtors shall pay Mr. Eckert the sum of $1,000,000 (the "<u>Settlement Amount</u>"), which amount shall be paid in immediately available funds, by wire transfer, pursuant to written instructions to be provided by Mr. Eckert.

3.    <u>Confidential Records</u>.  Upon the Closing Date, GSC shall be authorized to provide the Records to those potential bidders who agree to sign a non-disclosure agreement, in form and substance reasonably satisfactory to GSC, that requires the potential bidder to treat as confidential the Records and Mr. Eckert's personal information contained therein.  Mr. Eckert agrees to cooperate fully with GSC's efforts to sell its rights under the Policies, including by his producing or otherwise consenting to the release of such additional medical records in his possession, custody or control as may be reasonably necessary for a bidder, experienced in purchasing rights under life insurance policies, to evaluate GSC's rights under the Policies.

4.    <u>Shares of GSC Group</u>.  For the period from the Closing Date through closing of the sale of all of the Management Agreements, or such other date as may be agreed to in writing by the Debtors and Mr. Eckert, Mr. Eckert shall continue to hold, and not sell, divest, transfer or otherwise pledge or encumber, the Shares.  For so long as he owns or controls the Shares, Mr. Eckert agrees to cooperate fully with any efforts by GSC to avert a "change of control" of GSC Group, Inc. or the Manager that might trigger a need for additional consents under applicable non-bankruptcy law, <u>provided</u>, <u>however</u>, that Mr. Eckert will be required to provide such cooperation only to the extent not inconsistent with his obligations as a fiduciary of GSC.

5.    <u>Releases by GSC</u>.  Effective as of the Closing Date, by operation of this subsection (for the avoidance of doubt, without the needs for any further steps or actions to be taken by any other party), the Non-Recourse Note is hereby deemed satisfied in full and GSC hereby irrevocably waives, releases and forever discharges any claim that it may have related to the Non-Recourse Note.

6.    <u>No Admission of Liability</u>.  The Parties acknowledge and agree that delivery of the Settlement Amount and the other terms and conditions of this Agreement are for settlement purposes only and shall not be construed or interpreted as an admission or acknowledgement by any Party of any liability whatsoever to any Party or person in any proceeding.

7.    <u>Conditions Precedent</u>.  Unless otherwise agreed in writing by the Parties, certain terms of this Agreement shall become effective automatically (for the avoidance of doubt without the need for any further steps or actions by any Party) ("<u>Closing Date</u>") only upon satisfaction of each of the following conditions:

(a)    full execution of this Agreement;

(b)    The Bankruptcy Court shall enter an order approving this Agreement and such order shall become final and non-appealable; and

(c)    receipt by Mr. Eckert of the Settlement Amount.

8.     Termination; Effect.

(a)     Denial of Motion.  If for any reason the Bankruptcy Court denies the Motion, then GSC or Mr. Eckert may, at their discretion, terminate this Agreement by providing written notice to the other, upon which termination this Agreement shall be of no force or effect and the Parties shall be returned to the *status quo ex ante* as of the Effective Date as though this Agreement had never been executed.

(b)     Additional Right to Terminate.  If for any reason GSC has not obtained a final, non-appealable order approving this Agreement on or before December 31, 2010, then either GSC or Mr. Eckert may, at their sole discretion, terminate this Agreement by providing written notice to the other, upon which termination this Agreement shall be of no force or effect and the Parties shall be returned to the *status quo ex ante* as of the date hereof as though this Agreement had never been executed.

9.     Representations and Warranties. Each of the Parties hereby represents, warrants and acknowledges, as of execution of this Agreement and the Closing Date, that:

(a)     Knowing Agreement.  Such Party (i) has read carefully and understands fully the terms and conditions of this Agreement, (ii) is represented by legal counsel of its choice, (iii) had full opportunity to consult with such counsel regarding the terms hereof, and (iv) signed this Agreement of its own volition;

(b)     Authority.  Subject to the satisfaction of section 7(b) above, this Agreement has been duly authorized, executed, delivered and approved by all required corporate, partnership or limited liability company action, as the case may be, and the individual executing this Agreement on its behalf is fully authorized to do so;

(c)     Validity.  Subject to the satisfaction of section 7(b) above, this Agreement is a valid and binding agreement, enforceable in accordance with its terms; and

(d)     No Transfer of Claims.  Mr. Eckert owns and has not assigned, transferred or otherwise conveyed, or attempted to assign, transfer or convey, in whole or in part, to any other person or entity, any rights, claims or causes of action identified in section 5 above.

10.     No Strict Construction.  The Parties have participated jointly in the negotiation and drafting of this Agreement.  In the event an ambiguity or question of intent or interpretation arises with respect to this Agreement, this Agreement shall be construed as if drafted jointly by the Parties, and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.

11.     Fees and Costs.  Each Party shall bear its or his own attorneys' fees, costs and expenses incurred in the negotiation and preparation of this Agreement.

12.     Entire Agreement.  This Agreement constitutes the complete and entire agreement between the Parties with respect to the subject matter herein.

13.     <u>Amendment/Modification</u>.  This Agreement may not be amended, modified or altered except by written instrument duly executed by all Parties.

14.     <u>Governing Law.</u>  This Agreement shall be governed by the laws of the State of New York without giving effect to that state's principles of conflicts of laws.

15.     <u>Consent to Jurisdiction/Waiver of Jury Trial</u>.  Any proceeding to interpret or enforce any term of this Agreement shall be adjudicated by and subject to the exclusive jurisdiction of the Bankruptcy Court, and the Parties hereby submit to the core jurisdiction of the Bankruptcy Court for that purpose, waive any objection as to jurisdiction or venue, and agree not to assert any defense based upon lack of jurisdiction, improper venue or lack of core jurisdiction in any such action.  Each Party irrevocably waives all right to trial by jury in any such action.

16.     <u>Successors and Assigns</u>.  This Agreement shall be binding upon and inure to the benefit of each Party and its successors and permitted assigns.

17.     <u>Headings</u>.  Headings used herein are for convenience only and shall not be deemed to affect the meaning or construction of any of the provisions hereof.

18.     <u>Counterparts; Facsimile</u>.  This Agreement may be executed in any number of counterparts, each of which shall constitute an original but together shall constitute one and the same instrument.  This Agreement may be executed by fax or .pdf transfer of a signed original, each of which shall be as fully binding on the Party as a signed original.

*[signature page immediately follows]*

WHEREFORE, the Parties have executed this Agreement as of the Effective Date.

GSC GROUP, INC., Debtor in
Possession, on behalf of itself and its
debtor and non-debtor affiliates


By_____
    Name:
    Title:




_____
        Alfred C. Eckert III