|  |  |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------x<br>In re:<br><br>GSC GROUP, INC., *et al.*,<br><br>Debtors.<br>------------------------------------------------------------x | NOT FOR PUBLICATION<br><br>Chapter 11<br>Case No.  10 – 14653 (AJG)<br><br>(Jointly Administered) |

**OPINION REGARDING FIRST INTERIM APPLICATION OF
KAYE SCHOLER LLP FOR COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE DEBTORS FOR THE
PERIOD OF AUGUST 31, 2010 THROUGH NOVEMBER 30, 2010**

Before the Court is the First Interim Application of Kaye Scholer LLP ("Kaye Scholer") for Compensation for Services Rendered and Reimbursement of Expenses as Counsel to the Debtors for the Period of August 31, 2010 through November 30, 2010, dated January 28, 2011 (the "Fee Application").  The United States Trustee (the "U. S. Trustee") filed an Objection to the Fee Application on March 11, 2011 (the "Objection").  Kaye Scholer filed a reply to the Objection on December 19, 2011 (the "KS Reply").  A hearing on this matter was held before the Court on December 21, 2011 (the "Hearing").  After the Hearing, the Court requested a letter from Kaye Scholer outlining exactly what expenses, fees, and other concessions, if any, Kaye Scholer had made to date.  In response to the Court's request, Kaye Scholer submitted a letter on January 6, 2012 (the "KS Letter").  The U.S. Trustee replied to the KS Letter on January 12, 2012 (the "UST Letter").

*Jurisdiction*

The Court has jurisdiction to consider the Motion and the requested relief in accordance with 28 U.S.C. §§ 157 and 1334.  Consideration of the Motion is a core proceeding pursuant to

28 U.S.C. § 157(b)(2)(B). Venue before this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

*Background*

On August 31, 2010 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors' cases are being jointly administered. On September 1, 2010, the Debtors filed their Application (the "Retention Application") Requesting Entry of an Order (the "Retention Order") Authorizing the Employment and Retention of Kaye Scholer as Counsel for the Debtors, effective *nunc pro tunc* to the Petition Date. The Court entered the Retention Order on September 22, 2010. As Kaye Scholer notes in the Fee Application, the Debtors' chapter 11 cases were filed with the intention of selling the Debtors' business under section 363 of the Bankruptcy Code in a timely fashion to minimize any erosion in value. The sale process culminated in an auction which began at 9:00 a.m. on October 26, 2010 and concluded at 4:00 a.m. on October 29, 2010 (the "Auction").

*Basis for Relief*

Section 330 of the Bankruptcy Code provides that a court may award: (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and (B) reimbursement for actual, necessary expenses.[1] Section 331 of the Bankruptcy Code permits a professional person to apply to the court for interim compensation.[2] The court may, on its own motion or on the motion of the United States Trustee for the Region or the District, or any other

---

[1] 11 U.S.C. § 330 (a)(1)(A)-(B).
[2] *See* 11 U.S.C. § 331.

2

party in interest, award compensation that is less than the amount of compensation that is requested.[3]

Section 330(a)(3)(A) provides the following standards for a court's review of a fee application:

> In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—(A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time the service was rendered toward the completion of, a case under this title; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and (F) whether the compensation is reasonable, based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.[4]

Additionally, no professional should seek reimbursement of an expense which would otherwise not be allowed pursuant to the Bankruptcy Court's Administrative Order M-389 dated November 25, 2009 (the "Amended Guidelines") or the U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, dated January 30, 1996 (the "UST Guidelines").[5]

Kaye Scholer, as the applicant, has the burden of proving that its fee and expense request is reasonable.[6] That Black Diamond, rather than the Debtors, is the entity responsible for paying the amount of fees and expenses ultimately approved by the Court for the period covered by the

---

[3] *See* 11 U.S.C. § 330 (a)(2).
[4] 11 U.S.C. § 330(a)(3)(A)-(F).
[5] *See* Order Under 105(a) and 331 of the Bankruptcy Code, Bankruptcy Rule 2016 and Local Rule 2016-1 Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals signed September 22, 2010 (the "Fee Order"), p. 2-3.
[6] *See In re Northwest Airlines Corp.*, 382 B.R. 632, 645 (Bankr. S.D.N.Y. 2008) (citations omitted).

Fee Application has no bearing on the standard by which the Court will grant or deny Kaye Scholer's fees and expenses as reasonable under section 330 of the Bankruptcy Code.

*Discussion*

For the three-month period covered by the Fee Application, Kaye Scholer initially sought Bankruptcy Court approval of fees in the amount of $3,489,320.45 and expenses in the amount of $178,784.87. Subsequent to the Hearing and exchange of the KS and UST Letters, the U. S. Trustee has two remaining categories of objections to expenses and seven remaining categories of objections to fees which total $1,078,331.81 in amount. The U.S. Trustee seeks disallowance of $419,831.81, or roughly 39%, of those fees and expenses. Where noted below and as memorialized in the KS Letter, while disputing the contentions in the Objection, Kaye Scholer, has offered to make certain concessions with regard to the fees and expenses to which the U.S. Trustee has remaining objections. These total $63,810.20 in amount, or roughly 6% of the fees and expenses to which the U.S. Trustee objects.

A. United States Trustee's Objections

    1. Expenses

        a. Color copies

Kaye Scholer initially requested $31,357.50 in expenses for color photocopying. The KS Letter asserts that the cost to Kaye Scholer for the color photocopying, estimated at $0.55 per page, was $13,797.30. Kaye Scholer states that such rate is "equal to or cheaper than the amounts charged by outside vendors for color copies" and has offered to reduce its expense request to $13,797.30. Dividing such amount by $0.55 yields 25,086 copies made. The Court's Amended Guidelines provide for a maximum reimbursement rate of $0.20 per page for

4

photocopying.[7] There has been no explanation provided for the need for color rather than black and white photocopies and which would arguably justify reimbursement at a higher rate. Therefore, the Court will allow $5,017.20 in amount of expenses for the color photocopies (25,086 pages of copies made at $0.20 per page), resulting in disallowance of $26,340.30 of the amount sought.

      b.  Meals Provided During the Auction

The U.S. Trustee objects to $7,391.51 of the $19,991.51 sought for meals provided during the Auction. Kaye Scholer asserts that the number of active auction participants was "more than 70."[8] The maximum allowable reimbursement rate under the Amended Guidelines is $20 per meal per participant. Had Kaye Scholer served 70 participants three meals on Day 1, two meals on Day 2 and four meals on Day 3, the firm would have provided 630 meals and would be eligible for reimbursement in the amount of $12,600.[9] Had Kaye Scholer served the same nine meals to 75 participants, the amount eligible for reimbursement would be $13,500. Kaye Scholer argues that, to the extent the reimbursement guidelines apply, a deviation should be allowed in this case because "the Debtors' efforts in the First Interim Period laid the foundation for consummation of [the sale],"[10] and "there is no question that the auction and the resulting bid of $235 million dollars provided a tremendous benefit to the Debtors' estates."[11] The success of the Auction is irrelevant to the cost of meals which is eligible for reimbursement. The Court has not been given a reason that could justify reimbursement of meals at a rate higher than the rate provided for in the UST Guidelines. Therefore, the Court will allow $13,500 in

---

[7] Fee Order, p. 2-3 (referencing the Amended Guidelines).
[8] KS Letter, p.4, fn.6.
[9] UST Letter, p.3 ¶4.
[10] KS Reply, p.2, ¶2.
[11] KS Letter, p.4, fn.6.

5

amount of expenses for meals provided during the Auction, thereby disallowing $6,491.51 of the amount sought.

    2. Fees

        a. Lumped Time Entries and Vague Time Entries

The U.S. Trustee objects to $240,000 in amount of fees for which time entries are allegedly lumped and requests that $72,000, or 30% of those fees be disallowed. The U.S. Trustee objects to $590,000 in amount of fees for which time entries are allegedly vague and requests that $175,000, or 30% of those fees be disallowed.

Generally, fee applications, standing alone, must contain sufficient detail to demonstrate compliance with Section 330 of the Bankruptcy Code.[12] Any uncertainties due to poor record keeping are resolved against the applicant.[13] The UST Guidelines specifically provide that:

> Services should be noted in detail and not combined or "lumped" together, with each service showing a separate time entry . . . . Time entries for telephone calls, letters, and other communications should give sufficient detail to identify the parties to and the nature of the communication. Time entries for court hearings and conferences should identify the subject of the hearing or conference.[14]

Billing records must clearly identify each discrete task billed.[15] Aggregation of multiple tasks into one billing entry, referred to as block billing or lumping, is, as the U.S. Trustee indicates in the Objection, routinely disallowed as it makes it exceedingly difficult to determine the reasonableness of the time spent on each of the individual tasks performed.[16] As a result of lumping time, the timekeeper fails to sustain [his] burden of providing that [his] fees are

---

[12] *In re CCT Commc'ns, Inc.*, 2010 WL 3386947 at *4 (Bankr. S.D.N.Y. 2010) (*citing* UST Guidelines, (b)).
[13] *Id.* (*citing In re Poseidon Pools of America*, 216 B.R. 98, 100-101 (E.D.N.Y. 1997)).
[14] UST Guidelines (b)(4)(v).
[15] *In re Baker*, 374 B.R. 489, 494 (Bankr. E.D.N.Y. 2007) (*citing In re Fibermark, Inc.*, 349 B.R. 385, 395 (Bankr. D.Vt. 2006)); *see also* UST Guidelines b(4)(iii).
[16] *See Baker*, 374 B.R. at 494 (citations omitted).

6

reasonable.[17] Consequently, courts will summarily disallow time for discrete legal services merged together in a fee application.[18] In addition, time entries may not be vague.[19] Vague entries "make a fair evaluation of the work done and the reasonableness and necessity for the work extremely difficult, if not impossible."[20] One bankruptcy court has specified that "[e]ntries that contain such vague characterization of the services performed as 'meeting with,' 'conversations with,' 'review materials or docket,' and 'draft correspondence to' fail to adequately describe the services provided and are routinely disallowed."[21]

The Fee Application includes numerous time entries that do not comply with the UST Guidelines or Amended Guidelines. The Objection lists the following examples of vague time entries: "(i) "call with P. Frank re open items (.50);" (ii) "conference call with Eric Rubenfeld (1:00);" (iii) "attention to correspondence from buyers (:30);" (iv) "research re sale process issues (4.83);" (v) "analysis of asset sale matters (1.83);" (vi) "review files;" (vii) "preparation for evidentiary hearing (3.0);" (viii) "meeting with R. Manzo (1:30);" (ix) "follow up matter re call (.25);" and (x) "prepared for hearing (1:30).""  The Court agrees with the U. S. Trustee that many of the time entries cited by the U.S. Trustee in the Fee Application are vague.

Time records correctly cited by the U.S. Trustee as "lumped" include:

> 9/1/2010 - Kipperman, Evan - telephone calls, meetings and correspondence both internally and with Capstone related to the confidentiality agreements (1.0)

---

[17] *In re Brous*, 370 B.R. 563, 576 (Bankr. S.D.N.Y. 2007).
[18] *See Baker*, 374 B.R. at 494, 496 (Court deducted 20 percent from the requested fees for improper block billing); *see also CCT*, 2010 WL 3386947 at *8 (Court allowed 30 minutes for each lumped entry, irrespective of the aggregate time billed for that entry).
[19] *See Baker*, 374 B.R. at 495 ("The records must be detailed enough to enable a Court to determine whether the attorneys are claiming compensation for hours that are 'redundant, excessive, or otherwise unnecessary.'"); *see also In re Bennett Funding Group*, 213 B.R. 234, 244 (Bankr. N.D.N.Y. 1997) ("In cases where the time entry is too vague or insufficient to allow for a fair evaluation of the work done and the reasonableness and necessity for such work, the court should disallow compensation for such services.").
[20] *In re Hudson*, 364 B.R. 875, 880 (Bankr. N.D.N.Y. 2007).
[21] *In re Hirsch*, 2008 WL 5234057, at *7 (Bankr. E.D.N.Y. 2009).

7

> 11/15/2010 - Nurnberg, D. - Calls, emails with Manzo, M. Solow re: litigation strategy; carry; lease documents (1.25)
>
> 11/21/10 - Solow, M. - Telephone conference with R. Manzo re open items and approval process strategy and issues with BD including calls with BD and debtor management and R. Manzo and advise re: appropriate response (.75)

In an effort to address the alleged deficiencies in clarity and specificity of the time entries as cited by the U.S. Trustee in the Objection, Kaye Scholer reexamined its time entries for the application period and submitted revised time entries (the "Amended Time Records") as "Exhibit B" to the KS Reply. There is dispute as to whether the U. S. Trustee requested that Kaye Scholer revise its time entries in order to address the U. S. Trustee's objections.[22] At the Hearing, counsel to the U.S. Trustee maintained that the U.S. Trustee's position regarding the Amended Time Records is that whatever efforts Kaye Scholer made to clarify the time records, that those efforts were too late and reviewing the few hundred pages of Amended Time Records would have caused the U.S. Trustee to spend valuable resources on a task it had already undertaken with regard to the Fee Application. As such, the U.S. Trustee has not reviewed the Amended Time Records and has not taken a position on whether the amendments do, in fact, address any of the U.S. Trustee's outstanding objections.

As a firm that regularly practices before the Bankrupty Court, Kaye Scholer should be familiar with both the Amended Guidelines and UST Guidelines. There is no reason for the number of entries to have been as deficient as they were. The Court notes, however, Kaye Scholer, either on its own initiative or in response to the U.S. Trustee's request, did reevaluate, with a considerable investment of time, the time records for the period at issue and submit the Amended Time Records.

---

[22] *See* Hearing transcript p. 12, lines 10-23 and p. 26 lines 18-20.

Given the number of entries that required clarification, the Court conducted a review of the Amended Time Records by comparing a sampling of time records to their amended counterparts. Regardless of whether the U.S. Trustee requested the production of the Amended Time Records, there appears to be no reason why the U.S. Trustee could not have reviewed a sampling of the Amended Time Records similar in substance to the review which the Court undertook. At a minimum, such effort would have provided some guidance to the Court in its analysis. Further, it may have led to a consensual resolution of the matter.

Based upon the Court's review, the Amended Time Records seem to address some, but not all, of what the Court found were legitimate objections to Kaye Scholer's fees and expenses. For example, the U. S. Trustee objected to the following entry as lumped: "Meeting with R. Manzo, P. Frank and minority group of senior secured lenders at White and Case including preparation and same with R. Manzo."[23] Kaye Scholer's narrative in the Amended Time Records reads: "Not lumped. Tasks are interrelated and time cannot be allotted separately to such tasks."[24] The Court questions why time spent in a meeting cannot be separated from the time spent preparing for the meeting. A more egregious example appears on the same page. The U. S. Trustee objected to "Multiple corrs w/ E. Kipperman, M. Micheli and T. Nurnberg re: APA/Asset List, draft notice of hearing and asset list/APA, finalize and file notice, APA and asset lists."[25] Kaye Scholer's narrative in the Amended Time Records appears to concede that the entry is lumped and does not bother to correct or justify it, noting only: "No change."[26]

---

[23] *See* Amended Time Records, p. 3.
[24] *Id*.
[25] *Id*.
[26] *Id*. *Contra* Narratives of the Amended Time Records which read "No change" and include a justification for the entry. *See e.g.*, Amended Time Records, p.4 ("No Change. Justification: at least 20 separate emails regarding the asset list over the course of the day. As the correspondence was received the changes were made.").

9

In some instances, vague time entries such as "[c]orrespondence relating to document production request; review files" are also unchanged.[27] Even where Kaye Scholer has revised the time entry, some of those revisions are inadequate. For example, one entry which was objected to as vague reads: "Call with Capstone re due diligence (:45); follow-up with P. Frank (:15)." The amended time narrative differs from the original only as shown: "Call with Capstone re due diligence (:45); follow-up with P. Frank re same (:15)."[28] The Capstone entry, as revised, does not identify the party to the communication and neither entry, as revised, provides sufficient detail to identify the nature of the communication. Revisions of this nature are not responsive to the objections made by the U.S. Trustee.

Moreover, the Court undertook a comparison of the Fee Application with fee applications submitted by Kaye Scholer in Enron, another case which was before this Court. The time records which were submitted by attorneys from the firm in Enron were, on the whole, more detailed, clearer, and better separated into discrete tasks than those which were submitted in this case. Considering this comparison, the Court's independent review of the Amended Time Records as well as the arguments set forth in the Fee Application, the Objection, the KS Reply, the KS Letter and at the Hearing, the Court finds that a 20% reduction, approximately $166,000, in fees that the U.S. Trustee objected to as vague and/or lumped is warranted.

    b. Billing Inaccuracies

The U.S. Trustee objects to $2,100 in amount of fees for which time entries are duplicative and requests that 100% of those fees be disallowed. Kaye Scholer attests that "[t]hrough the process of amending all objected to time entries, Kaye Scholer attorneys verified

---

[27] *See* Amended Time Records, p.7.
[28] *See* Amended Time Records, p.23.

10

the accuracy of their time entries, including those asserted as duplicative."[29] The Court has considered the assertions Kaye Scholer makes in the KS Letter and the evidence proffered by Kaye Scholer in the form of the Amended Time Records and will allow the $2,100 of fees found to be duplicative and/or repetitive by the U.S. Trustee.

       c.   Overhead/Administration

The U.S. Trustee objects to $82,500 in amount of fees which the U. S. Trustee alleges time entries indicate are noncompensable overhead or administration costs and requests that 100% of those fees be disallowed. The UST Guidelines provide that a factor relevant to the determination of whether an expense is proper includes the following:

> "[w]hether the expense[] appears to be in the nature [of] nonreimbursable overhead. Overhead consists of all continuous administrative or general costs incident to the operation of the applicant's office and not particularly attributable to an individual client or case. Overhead includes, but is not limited to, word processing, proofreading, secretarial and other clerical services…"[30]

*In re Fibermark*,[31] a case cited by the U.S. Trustee defines "overhead" as "expenses…incurred day to day by a professional's office regardless of whom it represents or what services it renders." Typically overhead expenses are "rent, insurance . . . secretarial and clerical pay, library, computer costs . . . office supplies . . . ."[32] Below are examples of expenses to which the U.S. Trustee objects as noncompensable overhead as well as Kaye Scholer's responses to such examples.

---

[29] KS Letter, p.3 fn. 4.
[30] UST Guidelines (b)(5)(vii).
[31] 349 B.R. at 400.
[32] *Id*.

11

| Time Spent | Narrative (as objected to by the U.S. Trustee) | Kaye Scholer's Reply |
|---|---|---|
| 6.67 hours | "Add documents to data room and index (1:55); create management agreement binder. (4:45)"[33] | "Not overhead. These services are a necessary and intergral [sic] component of administering the chapter 11 cases." |
| 0.50 hours | "worked on document conversions and organization"[34] | None. |
| 1.17 hours | "proofing changes on APA"[35] | "Not overhead. These services are a necessary and intergral [sic] component of administering the chapter 11 cases." |
| 8.67 hours | "Prepare and work with support staff to prepare several copies of bid documents in two differently formatted sets."[36] | "Not overhead. These services are a necessary and intergral [sic] component of administering the chapter 11 cases." |
| 1.75 hours | "meet with support staff regarding pdf conversion and formatting issues (:25); review differences page by page between disclosure schedules created by KS and thosecreated [sic] by bidder (1:00)"[37] | "Not overhead. These services are a necessary and intergral [sic] component of administering the chapter 11 cases." |
| 6.25 hours | "meet with E. Kipperman and J. Stark regarding changes to schedule format and discuss with J. Stark (:55); attend to auction room set-up (1.55); and related logistics of auction (scheduling, describing tasks to support staff, contributing at meeting of paralegals and other follow-up as necessary) (1:50; preparing and setting up bid document sets (1.45)"[38] | "Not overhead. These services are a necessary and intergral [sic] component of administering the chapter 11 cases." |
| 0.75 hours | "Met with team to discuss logistics for the auction."[39] | "Not overhead. Necessary and compensable services for administration of sale process." |

Kaye Scholer has offered to reduce its fees by $8,250 for entries objected to by the U.S. Trustee in this category. Although Kaye Scholer makes a general statement regarding its compliance with the UST Guidelines and Amended Guidelines for the request of fees and expenses made in the Fee Application, Kaye Scholer, as evidenced by the general responses it

---

[33] KS Reply, Exhibit B, p. 5.
[34] KS Reply, Exhibit B, p. 10.
[35] KS Reply, Exhibit B, p. 12.
[36] KS Reply, Exhibit B, p. 57.
[37] KS Reply, Exhibit B, p. 57.
[38] KS Reply, Exhibit B, p. 60.
[39] KS Reply, Exhibit B, p. 61.

provided in the Amended Time Records, has not adequately responded to the U.S. Trustee's objections and has not provided any other response which would otherwise establish that such amounts are customarily charged to non-bankruptcy clients of the firm.[40] Therefore, the Court will disallow $82,500 in fees which have been objected to as noncompensable overhead or administration costs.

      d. Staffing Inefficiencies

The U.S. Trustee objects to $97,500 in amount of fees for which time entries indicate staffing was inefficient and requests that $30,000, or approximately 30%, of those fees be disallowed. Kaye Scholer contests the U.S. Trustee's characterization of its staffing decisions as inefficient and has not offered to concede any amount for fees which the U. S. Trustee has thus labeled. Kaye Scholer argues generally that the success of the Auction is evidence of the reasonableness of Kaye Scholer's fee request and the staffing of 40 attorneys on various matters for the Debtors. Kaye Scholer also asserts specific responses to some of the U.S. Trustee's objections by citing, for example that "research [regarding] recent sale pleadings" in connection with the sale motion and asset purchase agreement was not inefficient because of the nature of the documents, Debtors' lack of in house legal counsel, and time constraints with respect to the sale process as dictated in the cash collateral order.[41] The Court notes that the success of the Auction may be evidence that staffing for the Auction was sufficient, but it does not shed light on whether the Auction was overstaffed. Upon consideration of the examples of staffing inefficiencies provided in the Objection and Kaye Scholer's responses, the Court will allow $82,875, thereby disallowing 15%, or $14,625, of the fees cited by the U.S. Trustee as representing staffing inefficiencies.

---

[40] *See* UST Guidelines (b)(5)(ii).
[41] *See* Amended Time Records, p.5.

e. Internal Case Administration Meetings

The U.S. Trustee objects to $16,000 in amount of fees for time spent at internal case administration meetings and requests that $8,000, or approximately 50%, of those fees be disallowed. In the KS Letter, Kaye Scholer proposes to reduce its fee for internal case administration meetings by $4,000 to $12,000. The Court finds that, to a great extent, internal case administration is a reasonable and necessary cost of performing the legal services outlined in the Fee Application and will allow $12,000 in fees for internal case administration meetings, thereby disallowing $4,000 of the amount sought.

f. Attorneys Performing Paralegal Tasks

The U.S. Trustee objects to the billing of 269 hours of attorney time to tasks which time entries indicate are paralegal or secretarial in nature. The U.S. Trustee requests that these 269 hours be billed at Kaye Scholer's maximum paralegal rate of $265 per hour for a total of $71,500. Kaye Scholer's bill for those 269 hours is $88,000. Therefore the U.S. Trustee requests that $16,500 be disallowed. In the KS Letter, Kaye Scholer proposes to reduce its $88,000 fee by $4,000 to $84,000. The Court finds that the U.S. Trustee correctly identified tasks that are paralegal or secretarial in nature and which were performed by attorneys. There is no basis in the record to believe that such tasks were performed more efficiently or effectively than a paralegal would have performed them. Thus, there is no justification for the performance of such tasks by persons charging attorney rates. A reasonable rate for the time it took to complete these tasks is Kaye Scholer's maximum paralegal rate of $265 per hour. Therefore, the Court will allow $71,500 in amount of fees for performance of these tasks, thereby disallowing $16,500.

A. Voluntary Reductions

The amounts sought by Kaye Scholer are net of voluntary reductions made by Kaye Scholer in connection with the monthly fee statements for the period covered by the Fee Application (the "Pre-Fee Application Reductions"). The Pre-Fee Application Reductions consist of $50,361.04[42] taken during the first monthly fee period,[43] $180,429.75 in fees and $7,405.96 in expenses taken during the second monthly fee period,[44] and $2,319.75 in fees and $10,489.63 in expenses taken during the third monthly fee period.[45] By the Court's calculation, the Pre-Fee Application Reductions amount to $251,006.13 (consisting of $182,749.50 in fees, $17,895.59 in expenses and $50,361.04 during the period covered by the First Monthly Fee Statement). This calculation differs from the $319,010.95 figure (consisting of $274,691.55 in fees and $44,319.40 in expenses) asserted by Kaye Scholer as the amount of Pre-Fee Application Reductions.[46] Based on the information which has been provided to the Court, the Court has been unable to reconcile the figures.

From the record, it is clear that the Pre-Fee Application Reductions are exclusive of the 50% reduction for non-working travel time required by the UST Guidelines and properly taken by Kaye Scholer in the Fee Application.[47] As the U.S. Trustee asserts, however, it is unclear as to whether the Pre-Fee Application Reductions represent Kaye Scholer's concession of otherwise compensable fees and expenses.[48] If the fees and expenses that were voluntarily reduced would have been otherwise compensable, then Kaye Scholer's reservation of its right to recapture the amount of Pre-Fee Application Reductions in its final fee application and in response to the

---

[42] This figure appears to represent the aggregate amount of reductions taken for fees and expenses during the period covered by the First Monthly Fee Statement, from the Petition Date through September 31, 2010.
[43] Cover sheet to the Fee Application, p.2 fn.2.
[44] Summary Sheet Part I to Kaye Scholer's Second Monthly Fee Statement (Docket number 211), fn.3 and 4.
[45] Summary Sheet Part I to Kaye Scholer's Third Monthly Fee Statement (Docket number 345), fn.3 and 4.
[46] Fee Application, p.6, ¶18.
[47] *See* Cover Sheet prefixed to the Fee Application, p.3, fn.4.
[48] *See* Objection, ¶27 and UST Letter, p.2 ¶1 and p.3 ¶3.

15

Objection[49] is arguably sustainable. As well, if the Pre-Fee Application Reductions consist of otherwise compensable time which was written off as a result of discussion with the Debtors or Black Diamond and which reflect a compromise of fees and expenses to which Debtors or Black Diamond objected, then a valid argument could be proffered that this Court would consider.

Because of a lack of information, the Court is unable to rule on the propriety of the reservation of rights with regard to reinstatement of the Pre-Fee Application Reductions, an action which would, effectively, offset such amount (whether that amount is $251,006.13 or $319,010.95)[50] against the amount of reductions that the Court has herein deemed appropriate. Further, based upon the information presented to the Court, there is no apparent nexus between the voluntary reductions taken and the amount of fees and expenses found objectionable by the U.S. Trustee.

The KS Letter outlines $38,435.24[51] in reductions that have been agreed upon with the U.S. Trustee. These reflect concessions made in categories other than the ones discussed herein. The $63,810.20 in reductions offered by Kaye Scholer regarding the fees and expenses that remain in dispute will not further reduce the amounts allowed herein.

*Conclusion*

Kaye Scholer's Fee Application is GRANTED, however, the expense amount for color photocopies is reduced by $26,340.30; the expense amount for meals provided during the Auction is reduced by $6,491.51; the fee amount is reduced by $166,000 for vague and/or lumped time entries; the fee amount is reduced by $82,500 for including noncompensable overhead or administration costs; the fee amount is reduced by $14,625 for staffing

---

[49] *See* Fee Application, p.6, fn.2.
[50] *See* the Court's calculation on p.15, *supra*.
[51] The KS Letter lists $37,806.34 as the amount of agreed upon reductions. On page 4 of the KS Letter, however, it appears that there was an additional agreed upon reduction of $628.90 relating to non-auction meal expenses.

inefficiencies; the fee amount for internal case administration meetings is reduced by $4,000; and the fee amount is reduced by $16,500 for tasks that are paralegal or secretarial in nature and which were billed at attorney rates.

| **Category of Objection** | U.S. Trustee Objection Amount | UST Requested Reduction | KS Proposed Reduction | Court Ordered Reduction |
|---|---:|---:|---:|---:|
| **EXPENSES** | | | | |
| Color Copies[52] | $26,340.30 | $26,340.30 | $17,560.20 | $26,340.30 |
| Meals Provided at the Auction[53] | $7,391.51 | $7,391.51 | $0.00 | $6,491.51 |
| **FEES** | | | | |
| Lumped Time Entries | $240,000.00 | $72,000.00 | $10,000.00 | $48,000.00 |
| Vague Time Entries | $590,000.00 | $175,000.00 | $20,000.00 | $118,000.00 |
| Billing Inaccuracies | $2,100.00 | $2,100.00 | $0.00 | $0.00 |
| Overhead/Administration | $82,500.00 | $82,500.00 | $8,250.00 | $82,500.00 |
| Staffing Inefficiencies | $97,500.00 | $30,000.00 | $0.00 | $14,625.00 |
| Internal Case Admin. Meetings | $16,000.00 | $8,000.00 | $4,000.00 | $4,000.00 |
| Legal Rates for Paralegal Tasks | $16,500.00 | $16,500.00 | $4,000.00 | $16,500.00 |
| **TOTAL AMOUNTS** | $1,078,331.81 | $419,831.81 | $63,810.20 | $316,456.81 |

Kaye Scholer is directed to submit an order consistent with this Opinion.

.

Dated: New York, New York
February 29, 2012

          /s Arthur J. Gonzalez
         **HONORABLE ARTHUR J. GONZALEZ**
         **CHIEF UNITED STATES BANKRUTPCY JUDGE**

---

[52] Kaye Scholer initially sought $31,357.50 for color photocopies.
[53] Kaye Scholer seeks $19,991.51 for meals provided during the Auction.