Aaron Rubinstein                **Hearing Date:  April 22, 2013 at 10:00 am**
Jeffrey A. Fuisz
Angela R. Vicari
KAYE SCHOLER LLP
425 Park Avenue
New York, New York 10022
(212) 836-8000

Scott L. Hazan
David M. Posner
OTTERBOURG, STEINDLER, HOUSTON & ROSEN, P.C.
230 Park Avenue
New York, New York 10169
(212) 661-9100

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **GSC GROUP, INC.** | ) | **Case No. 10-14653 (SCC)** |
| | ) | |
|         **Debtors.** | ) | |
| | ) | |

**RESPONSE OF KAYE SCHOLER LLP TO (1) LIMITED OBJECTION OF BLACK DIAMOND CAPITAL MANAGEMENT, L.L.C. AND GSC ACQUISITION HOLDINGS LLC TO THE MOTION OF THE UNITED STATES TRUSTEE FOR AN ORDER PURSUANT TO 11 U.S.C. § 105(A) AND BANKRUPTCY RULE 9019 APPROVING SETTLEMENT AGREEMENT BETWEEN THE UNITED STATES TRUSTEE AND KAYE SCHOLER LLP, AND (2) SUPPLEMENTAL STATEMENT REGARDING FINAL FEE APPLICATION OF KAYE SCHOLER LLP**

## TABLE OF CONTENTS

Page

INTRODUCTION ......................................................................................................... 1

ARGUMENT ............................................................................................................... 4

I.      BLACK DIAMOND'S PROPOSED CLAIM IS OUTSIDE THE SCOPE
        OF ITS LIMITED OBJECTION ............................................................. 4

II.     BLACK DIAMOND HAS WAIVED ANY OBJECTION TO KAYE
        SCHOLER'S FINAL FEE APPLICATION.......................................... 9

III.    BLACK DIAMOND'S PROPOSED CLAIM COULD NOT SURVIVE A
        MOTION TO DISMISS ..................................................................... 12

        A.      Black Diamond And The Debtors Released Their Claims Against
                Kaye Scholer ......................................................................... 13

        B.      Black Diamond Has Not Pleaded Any Conduct That Could
                Amount To A Breach Of Fiduciary Duty ................................. 14

        C.      Black Diamond Has Not Pleaded Any Recoverable Damages................. 16

IV.     ANY DAMAGES FOR ANY ALLEGED BREACH OF FIDUCIARY
        DUTY WOULD BE SUBSUMED WITHIN THE RELIEF PROVIDED
        BY THE SETTLEMENT AGREEMENT............................................. 17

V.      THE COURT CAN GRANT THE SETTLEMENT APPROVAL
        MOTION........................................................................................... 18

CONCLUSION.......................................................................................................... 22

# TABLE OF AUTHORITIES

Page(s)

CASES

*Allen v. McCurry,*
    449 U.S. 90 (1980)..................................................................................................19

*D.A. Elia Constr. Corp. v. Damon & Morey, LLP,*
    389 B.R. 314 (W.D.N.Y. 2008) ...............................................................................11

*In re Calise,*
    354 Fed. Appx. 510 (2d Cir. 2009)..........................................................................19

*In re Grumman Olson Ind., Inc.,*
    329 B.R. 411 (Bankr. S.D.N.Y. 2005)......................................................................16

*In re Madoff,*
    848 F. Supp. 2d 469 (S.D.N.Y. 2012).......................................................................20

*In re Medomak Canning,*
    922 F.2d 895 (1st Cir. 1990)...............................................................................20, 21

*In re Musicland Holding Corp.,*
    386 B.R. 428 (S.D.N.Y. 2008), *aff'd,* 318 F. App'x 36 (2d Cir. 2009)...................11

*In re Richter,*
    2010 WL 4272915 (Bankr. N.D. Iowa 2010) ..........................................................21

*In re Royster Co.,*
    132 B.R. 684 (Bankr. S.D.N.Y. 1991)......................................................................10

*Juris v. Inamed Corp.,*
    685 F.3d 1294 (11th Cir. 2012) ...............................................................................19

*Merriweather v. Sherwood,*
    250 F. Supp. 2d 391 (S.D.N.Y. 2003).......................................................................12

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Information Tech., Inc.,*
    369 F.3d 645 (2d Cir. 2004).....................................................................................12

*Pereira v. Cogan,*
    00 Civ. 619 (RWS), 2001 WL 243537 (S.D.N.Y. May 8, 2001) ...........................18

*San Remo Hotel, L.P. v. City and County of San Francisco, Cal.,*
    545 U.S. 323 (2005).................................................................................................19

ii

Page(s)

*SCS Commc'ns, Inc. v. Herrick Co., Inc.*,
  360 F.3d 329 (2d Cir. 2004)...........................................................................................16

*Securities Investor Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  477 B.R. 351 (Bankr. S.D.N.Y. 2012) ..........................................................................18

*St. Paul Fire & Marine Ins. Co. v. Pepsico, Inc.*,
  884 F.2d 688 (2d Cir. 1989)...........................................................................................18

*W.W.W. Assocs., Inc. v. Giancontieri*,
  77 N.Y.2d 157 (1990) ................................................................................................3, 10

## STATUTES

11 U.S.C. § 105(a) .................................................................................................................7

11 U.S.C. § 504....................................................................................................................6, 7

## OTHER AUTHORITIES

Bankruptcy Rule 9019 .....................................................................................................7, 20

Kaye Scholer[1] submits this response to Black Diamond's Limited Objection to the

Settlement Approval Motion ("Limited Objection") [ECF No. 1675] and its Supplemental

Statement Regarding Final Fee Application of Kaye Scholer ("Supplemental Statement") [ECF

No. 1707].

## INTRODUCTION

1.      No party other than Black Diamond has objected to the Settlement Approval

Motion or Kaye Scholer's Final Fee Application.  On March 15, 2013, Black Diamond filed its

Limited Objection for the stated purpose of preserving alleged claims against Kaye Scholer that

purportedly were unrelated to the allegations in the UST Motion.  On that same day, Black

Diamond let pass the Court-imposed deadline for objecting to Kaye Scholer's Final Fee

Application without filing any objection.

2.      By means of its Supplemental Statement, Black Diamond attempts to transform

its Limited Objection that the Settlement Agreement, if approved, would bar unspecified claims

against Kaye Scholer that were ***unrelated*** to the allegations in the UST Motion, into a request

that the Court consider an alleged breach of fiduciary duty claim against Kaye Scholer that is

***subsumed*** within the allegations in the UST Motion in evaluating Kaye Scholer's Final Fee

Application.  Black Diamond now makes this objection to Kaye Scholer's Final Fee Application

even though it made no such objection by the Court-imposed deadline of March 15, 2013 and

despite its agreement that the Settlement Agreement's terms provide "reasonable compensation"

for the allegations in the UST Motion (Limited Objection at ¶ 1).  Black Diamond has succeeded

only in demonstrating that both its Limited Objection and its Supplemental Statement are wholly

---

[1]     All capitalized terms have the same meanings given to them in Kaye Scholer's joinder in
the UST's Settlement Approval Motion [ECF No. 1665].

without merit.  The Court should reject Black Diamond's attempt to further prolong this

proceeding against Kaye Scholer for numerous reasons, any one of which constitutes an

independent basis for doing so.

3.      First, Black Diamond's suggested claim for breach of fiduciary duty is outside the

scope of its Limited Objection where it stated that it wanted to preserve "claims against Kaye

Scholer which have no relationship with the [UST Motion] and the issues discussed therein."

Limited Objection at ¶ 6.  Black Diamond has failed to identify any such claim despite numerous

opportunities to do so and does not even contend that any such claim exists.  There is no such

claim.  As this Court has stated, the UST Motion "put into play all of the conduct of the subject

professionals in this case."  Transcript (March 20, 2013) at 38.  Black Diamond has effectively

abandoned its Limited Objection, which is a sufficient basis for the Court to grant the Settlement

Approval Motion to which there are no other objections.  Moreover, this Court directed that

Black Diamond's Supplemental Statement be confined by the substance of its Limited Objection.

Transcript (April 3, 2013) at 26-27.  Black Diamond ignored that direction by failing to identify

any claim unrelated to the allegations in the UST Motion.  As a result, the Court should reject

Black Diamond's belated objection to Kaye Scholer's Final Fee Application and approve it

consistent with the terms of the Settlement Agreement.

4.      Second, even assuming that the Court considers Black Diamond's improper

request to convert its Limited Objection into an untimely objection to Kaye Scholer's Final Fee

Application, Black Diamond waived any such objection in a stipulation entered as an order by

this Court ("Stipulated Order").  ECF No. 1049 at § 12.  As Black Diamond concedes, by means

of the Supplemental Statement, it "request[s] that the Court consider [Kaye Scholer's alleged

breach of fiduciary duty] in evaluating Kaye Scholer's final fee application."  Supplemental

Statement at ¶ 2.  That plainly constitutes an objection to Kaye Scholer's Final Fee Application, which objection Black Diamond has waived.  Although Black Diamond acknowledges the Stipulated Order, it contends that the order does not bar its objection to Kaye Scholer's Final Fee Application because, contrary to the plain language of the Stipulated Order, the Stipulated Order supposedly was intended to bar only a subset of objections to Kaye Scholer's Final Fee Application "commonly known to all parties."  Supplemental Statement at ¶ 10.  But there is no occasion for this Court to consider Black Diamond's self-serving statement about its supposed subjective intent where, as here, the language of the Stipulated Order is unambiguous and provides no limitation on Black Diamond's express waiver.  *See W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162 (1990).

5.      Third, the alleged claim would not survive a motion to dismiss for three separate and independent reasons:  (a) by virtue of the Confirmed Plan and Confirmation Order, Black Diamond and the Debtors released any claims against Kaye Scholer arising from its provision of legal services to the Debtors (ECF No. 1212 at ¶¶ 28-29; ECF No. 1212-1 at §§ 10.5(a), 10.5(b)); (b) Kaye Scholer did not breach any fiduciary duty as a matter of law when Mr. Solow submitted declarations that conveyed his honest opinion regarding the quality of Capstone's work in these cases; and (c) Black Diamond has not identified any recoverable damages, which it concedes is a necessary element of a breach of fiduciary duty claim.

6.      Fourth, even assuming that Black Diamond could overcome all those obstacles, any damages for any alleged breach of fiduciary duty would be subsumed by the relief to which Kaye Scholer already has agreed in the Settlement Agreement.  Indeed, Black Diamond concedes that the relief is "reasonable compensation" for the issues raised in the UST Motion

(Limited Objection at ¶ 1) and its proposed breach of fiduciary duty claim duplicates an issue raised in the UST Motion.

7.      For any one and each of those reasons, the Court should overrule Black Diamond's Limited Objection and reject its request in the Supplemental Statement in advance of the hearing scheduled for April 22, 2013.  If the Court does so, because no other party has objected to the Settlement Approval Motion or Kaye Scholer's Final Fee Application, the Court also should grant the Settlement Approval Motion and approve Kaye Scholer's Final Fee Application consistent with the terms of the Settlement Agreement.  In that event, all the conditions to the Settlement Agreement will have been achieved and Kaye Scholer will honor all the terms of the Settlement Agreement.

8.      If, on the other hand, the Court determines that Kaye Scholer must defend Black Diamond's claim or any other claims at the April 22 hearing, then Kaye Scholer's purpose in entering into the Settlement Agreement will have been defeated.  Should Kaye Scholer be required to litigate Black Diamond's or other claims at the April 22 hearing, it will present a vigorous defense to any such claims in support of its contention that the Court should impose no remedy or a much less severe remedy than that to which Kaye Scholer agreed in the Settlement Agreement.

## ARGUMENT

## I.    BLACK DIAMOND'S PROPOSED CLAIM IS OUTSIDE THE SCOPE OF ITS LIMITED OBJECTION

9.      On March 15, 2013, Black Diamond filed its Limited Objection.  No other party objected to the Settlement Approval Motion.  Neither Black Diamond nor any other party objected to Kaye Scholer's Final Fee Application by the March 15, 2013 deadline.

10.    In its Limited Objection, with regard to the allegations in the UST Motion, Black Diamond did not dispute that the terms of the Settlement Agreement are fair and equitable and fall within a range of reasonableness.  To the contrary, "Black Diamond does not object to the principal relief sought in the [Settlement Approval] Motion; namely the settlement of the issues raised in the [UST Motion]."  Limited Objection at ¶ 1.  In particular, "Black Diamond . . . views the Settlement Agreement's terms as generally falling within a reasonable settlement range when considered in light of the allegations set forth by the UST in its Motion to Vacate."  *Id.* at ¶ 8; *see id.* at ¶ 1 ("The economic compensation and compliance programs to which Kaye Scholer has agreed in the Settlement Agreement appear to Black Diamond to be reasonable compensation for the claims against Kaye Scholer set forth in the [UST Motion])"; *id.* at ¶ 12 ("Black Diamond believes the economic and procedural terms of the Settlement Agreement fall within a reasonable settlement range in addressing the concerns raised by the UST in the Motion to Vacate as it relates to Kaye Scholer").

11.    Instead, Black Diamond objected on the limited ground that "the Settlement Agreement goes far beyond simply settling the allegations in the Motion to Vacate."  *Id.* at ¶ 2. In particular, Black Diamond objected because the Settlement Agreement "cannot . . . be used as a predicate for settling, with no consideration, ***claims against Kaye Scholer which have no relationship with the [UST Motion] and the issues discussed therein***."  Limited Objection at ¶ 6 (emphasis added).  At a status conference subsequent to filing the Limited Objection, Black Diamond's counsel reiterated that Black Diamond wished to preserve claims "[o]nly if it's something that isn't part of the U.S. Trustee's motion."  Transcript (March 20, 2013) at 39.

12.    But, as this Court made clear at the same hearing, the UST Motion "put into play all of the conduct of the subject professionals in the case."  *Id.* at 38.  More specifically, the UST

Motion raised all issues regarding Kaye Scholer's alleged conduct "pre-effective date. The

conduct, everything that occurred is in play whether you put one label on it or another label on

it." *Id.* at 37. As a result, and as the Court indicated, there are no claims not subsumed within

the UST Motion for Black Diamond (or any other party) to pursue against Kaye Scholer:

> We have all the conduct pre-[effective date] in play. We're going to do it once.
> We're not going to take a shot here and then have a situation where you're going
> to State Court and there's going to be another litigation over the same predicate
> facts called something else. That's just not the way it works.

*Id.* at 38.

13.    In response to the Court's challenge to identify a claim that Black Diamond

wished to preserve outside the scope of the UST Motion, Black Diamond's counsel offered a

potential breach of fiduciary duty claim against Kaye Scholer:

> Well I think the key issue you said there is the same predicate facts and that's a
> question. Let's just say that I was looking at whether Kaye Scholer had
> [b]reached its fiduciary duty to the Debtor by helping Capstone to secure a bonus
> from the estate and that was a breach of their fiduciary duty to the Debtors. Is that
> really what the 504 motion was about?

*Id.* at 38.

14.    The Court did not accept that proposed breach of fiduciary duty claim as an

example of alleged conduct outside the scope of the UST Motion:

> You're calling it the 504 motion. The motion of the U.S. Trustee put into play all
> of the conduct of the subject professionals in the case. . . .

*Id.*

15.    More recently, during a conference on March 27, 2013, the Court reiterated that

the scope of the UST Motion went well beyond Section 504 issues when counsel for Black

Diamond said that its joinder in the UST Motion "was in the scope of the issues with respect to

504." Transcript (March 27, 2013) at 10. The Court responded:

You keep telling me, you frankly keep making that up.  504 is one of the issues
that was raised, and perhaps from time to time it was used as a shorthand for
everything that occurred.  The U.S. Trustee's pleading went way beyond 504, and
it had to do with non-disclosure and missed disclosure.  And you joined in that
pleading.

*Id.*[2]

16.     Nevertheless, in a scheduling order prepared after a hearing on April 3, 2013, the

Court gave Black Diamond another opportunity to "show its hand in a pleading" by identifying

those claims that it wished to preserve and also to address whether any such claims, if asserted,

could survive a motion to dismiss.  Transcript (April 3, 2013) at 36; Modified Scheduling Order

[ECF No. 1698].  In addition, at the same hearing, the Court made clear that any supplemental

pleading that Black Diamond intended to file would be confined by the substance of its Limited

Objection:

> MR. FUISZ:   I understand, Your Honor.  I just wanted to make sure that it's
> crystal clear that what we're talking about as the objection to the Kaye Scholer fee
> application is the substance of what is in Black Diamond's limited objection.
>
> MS. SCHWARTZ:     Right.
>
> THE COURT: Correct.
>
> MR. FUISZ:   And nothing more.

---

[2]     It is especially disingenuous for Black Diamond to characterize the UST Motion as
relating only to Section 504 issues (Limited Objection at ¶ 3) when Black Diamond now
concedes that Kaye Scholer "was not a party to a fee sharing arrangement."  Objection
of Black Diamond to the Motion of the United States Trustee for an Order Pursuant to 11
U.S.C. § 105(a) and Bankruptcy Rule 9019 Approving Settlement Agreements Between
the United States Trustee, Capstone Advisory Group, LLC, Robert J. Manzo, RJM, LLC
and RJM 1, LLC ("Black Diamond Objection to Capstone/Manzo Settlements") [ECF
No. 1676] at ¶ 29.  The UST Motion plainly raised issues related to Kaye Scholer's
conduct as counsel for the Debtors beyond the legal question of whether the agreement
between Capstone and Mr. Manzo was prohibited by 11 U.S.C. § 504; and specifically
addressed Kaye Scholer's efforts to "help[] Capstone to secure a bonus from the estate."
*See* UST Motion at ¶¶ 109-10.

THE COURT:  That's it.  That's it.  The – we're done otherwise.  There were
deadlines, and the only objection is the objection to Black – of Black Diamond. . .
.

Transcript (April 3, 2013) at 26-27.

17.    Thus, it was incumbent on Black Diamond to identify a claim it wished to

preserve against Kaye Scholer consistent with its Limited Objection, *i.e.*, a claim "***hav[ing] no***

***relationship with the [UST Motion] and the issues discussed therein***."  Limited Objection at ¶ 6

(emphasis added).  Black Diamond has failed to do so.

18.    Instead, in its Supplemental Statement, Black Diamond changed course.  Black

Diamond identified a single claim that is subsumed in, rather than unrelated to, the allegations in

the UST Motion and seeks to pursue it now as an objection to the Final Fee Application, rather

than preserve it for some later date.  Black Diamond identified a single claim against Kaye

Scholer:  a claim for alleged "breach of its duty of loyalty to the Debtors" based on "Michael

Solow's submission of a declaration in support of [Capstone's] bonus motion . . . in February

2012, at a time when he was still acting as the lead Debtors' counsel."  Supplemental Statement

at ¶ 2.

19.    The purported breach of fiduciary duty claim is the same purported claim that

Black Diamond's counsel offered at the March 20, 2013 conference.  As noted above, this Court

previously has indicated that that claim is subsumed within the allegations raised in the UST

Motion.[3]  Indeed, the UST specifically included allegations regarding Mr. Solow's submission of

---

[3]    By contrast, as the Court has noted, the unsecured creditors have raised issues in
objecting to Capstone's final fee application beyond those raised in the UST Motion:
"The pleading that [the unsecured creditors] filed is raising how Mr. Manzo billed on a
particular day.  [It is] making allegations about over billing.  [It is] making allegations
about manufacture[] of time records.  Looks like the kitchen sink to me."  Transcript
(March 20, 2013) at 40.

declarations in support of Capstone's success fee motion and cited to the docket entries for the declarations in the UST Motion. *See* UST Motion at ¶¶ 70-73, 110. In addition, the UST Motion specifically cited as an alleged basis for the relief sought that "Mr. Solow, while representing the Debtors was aiding Capstone in prosecuting its application for a success fee." *Id.* at 102; *see id.* at 106 ("Mr. Solow submitted two declarations in support of Capstone's and Mr. Manzo's quest for a success fee. At all times, Mr. Solow knew that his 'good friend' and 'client,' Mr. Manzo, stood to earn in excess of $2 million if the success fee were approved.").

20.     Because Black Diamond's purported desire to preserve claims against Kaye Scholer unrelated to the allegations in the UST Motion was the sole basis for its Limited Objection and because Black Diamond has failed to identify any such claim, the Court should overrule Black Diamond's Limited Objection as moot. In addition, Black Diamond failed to comply with this Court's direction by asserting a breach of fiduciary duty claim that is beyond the scope of its Limited Objection because it is subsumed within, rather than unrelated to, the issues raised in the UST Motion. Accordingly, the Court should grant the Settlement Approval Motion and approve Kaye Scholer's Final Fee Application consistent with the terms of the Settlement Agreement.

## II.    BLACK DIAMOND HAS WAIVED ANY OBJECTION TO KAYE SCHOLER'S FINAL FEE APPLICATION

21.     Even assuming the Court considers Black Diamond's untimely objection to Kaye Scholer's Final Fee Application, the Court should reject that objection. In the Supplemental Statement, Black Diamond "request[s] that the Court consider [Kaye Scholer's alleged breach of fiduciary duty as] one additional factor in evaluating the Kaye Scholer final fee application." Supplemental Statement at ¶ 2. Black Diamond's request should be rejected because it has waived any right to object to Kaye Scholer's fees.

22.    As Black Diamond concedes in its Supplemental Statement (at ¶ 9), it has waived

any objection to Kaye Scholer's Final Fee Application.  The Stipulated Order entered by this

Court on December 20, 2011, expressly provides:

> Black Diamond hereby waives any right to object to any fees and expenses of the
> Trustee, Shearman & Sterling LLP, Capstone Advisory Group, LLC, Ernst &
> Young LLP, Togut Segal & Segal LLP, Epiq Bankruptcy Solutions, LLC and any
> other retained professional of the Trustee or the Debtors whose retention requires
> court approval; *provided* that Black Diamond may object to the allowance of such
> fees and expenses incurred after July 26, 2011 ("Post Closing Amounts"), but
> only to the extent that allowed Post-Closing Amounts would exceed $8 million in
> the aggregate if such objections were sustained.

ECF No. 1049 at § 12.

23.    Black Diamond now contends that this express waiver does not bar its request that

the Court consider Kaye Scholer's alleged breach of fiduciary duty in evaluating Kaye Scholer's

Final Fee Application because the supposed "intent of the Stipulation is to bar Black Diamond

from objecting to retained professionals' fees in the manner commonly known to all parties

(subject to the $8 million cap for Post-Closing Amounts (as defined therein)); in other words

Black Diamond is barred from filing an objection questioning a retained professional's hourly

billing or overall case staffing practices other than Post-Closing Amounts in excess of $8

million."  Supplemental Statement at ¶ 10.  Black Diamond's position is nonsense.

24.    The Stipulated Order "is subject to the general principles governing the

construction, interpretation and law of contracts."  *In re Royster Co.*, 132 B.R. 684, 688 (Bankr.

S.D.N.Y. 1991).  "A familiar and eminently sensible proposition of law is that, when parties set

down their agreement in a clear, complete document, their writing should as a rule be enforced

according to its terms."  *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162 (1990).  It

follows that "before looking to evidence of what was in the parties' minds, a court must give due

weight to what was in their contract."  *Id.*

25.    The Stipulated Order is unambiguous.  Pursuant to its terms, Black Diamond "waive[d] any right to object to any fees and expenses" of Kaye Scholer.  ECF No. 1049 at § 12. There is no limitation on Black Diamond's waiver other than with respect to fees and expenses incurred after July 26, 2011 under certain circumstances, which do not apply here.  Accordingly, the Court should reject Black Diamond's attempt to rewrite the contract with its self-serving post-hoc statement of its subjective intent in negotiating the Stipulated Order.  *See, e.g.*, *In re Musicland Holding Corp.*, 386 B.R. 428, 438 (S.D.N.Y. 2008) ("courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing"), *aff'd*, 318 F. App'x 36 (2d Cir. 2009).

26.    In any event, Black Diamond's attempt to explain why its "request that the Court consider [Kaye Scholer's alleged breach of fiduciary duty] in evaluating the Kaye Scholer final fee application" (Supplemental Statement at ¶ 2) is not an objection to Kaye Scholer's Final Fee Application itself betrays the lack of merit in Black Diamond's position.  Black Diamond contends that the "claim is being raised now because it may be barred by principles of *res judicata* if not raised at or before entry of an order approving Kaye Scholer's fees," which "does not convert the claim into an objection to the fees themselves."  Supplemental Statement at ¶ 11.[4] Black Diamond's motive in raising its alleged claim in connection with Kaye Scholer's Final Fee Application is beside the point and does not detract from the fact that it is doing precisely that.

---

[4]    Black Diamond is correct to the extent that a final order approving Kaye Scholer's fees will bar all future claims "challeng[ing] the quality of legal services rendered by [Kaye Scholer] as [Debtors'] counsel in the bankruptcy and related proceedings."  *D.A. Elia Constr. Corp. v. Damon & Morey, LLP*, 389 B.R. 314, 319 (W.D.N.Y. 2008) (malpractice claims asserted after final order approving fees of debtor's counsel were barred by *res judicata*).  That was also true when Black Diamond let the Court-imposed March 15 deadline pass without objecting to Kaye Scholer's Final Fee Application.

27.    Moreover, Black Diamond had numerous opportunities to raise the claim (if, contrary to fact, it had any merit) in another context, but chose not to do so.  Indeed, on multiple occasions, the Court warned the parties to assert *all* their claims arising from the professionals' pre-Effective Date conduct.  Thus, at a hearing on December 3, 2012, the Court inquired as to the nature of the pleadings that the U.S. Trustee and Black Diamond intended to file.  At that time, the Court stated that "I have no intention of conducting two separate series of trials." Transcript (December 3, 2012) at 32.  Black Diamond's counsel "agreed" and assured the Court that Black Diamond "would not be looking for any sort of separate hearing or separate matters that would be outside the scope of what the U.S. Trustee is filing." *Id.*  When Black Diamond joined in the UST Motion on January 11, 2013, it did not assert any additional claims based on Kaye Scholer's conduct in these cases beyond those asserted in the UST Motion.  It is too late now.  As this Court stated at the April 3 status conference, "[n]othing in the scheduling order should revive a lapsed deadline that already occurred."  Transcript (April 3, 2013) at 47.[5]

## III.    BLACK DIAMOND'S PROPOSED CLAIM COULD NOT SURVIVE A MOTION TO DISMISS

28.    Even assuming that Black Diamond could overcome the facts that its alleged breach of fiduciary claim is outside the scope of its Limited Objection and that it has waived any objection to Kaye Scholer's Final Fee Application, the claim would not survive a motion to

---

[5]    "A party may be held in civil contempt for failure to comply with a court order if '(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner.'" *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Information Tech., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004).  Black Diamond's conduct in objecting to Kaye Scholer's Final Fee Application despite the plain and unambiguous language of the Stipulated Order satisfies the requirements for civil contempt.  As a consequence, the Court can award Kaye Scholer its fees in responding to Black Diamond's improper objection.  *See Merriweather v. Sherwood*, 250 F. Supp. 2d 391, 394 (S.D.N.Y. 2003).

dismiss. As demonstrated below, the claim has been released, Black Diamond has failed to plead

any conduct that would amount to a breach of fiduciary duty, and also has failed to plead

damages.

### A. Black Diamond And The Debtors Released Their Claims Against Kaye Scholer

29.     Under the Confirmed Plan, approved by this Court, the Debtors and Black

Diamond have released their claims against Kaye Scholer.  Thus, the Confirmed Plan provides

that the Debtors and Black Diamond:

> release, waive and discharge any and all claims, obligations, suits, judgments,
> damages, demands, debts, rights, Causes of Action and liabilities whatsoever,
> whether known or unknown, foreseen or unforeseen, existing as of the Effective
> Date or thereafter arising, in law, at equity, whether for tort, contract, or
> otherwise, based in whole or in part upon any act or omission, transaction, or
> other occurrence or circumstances existing or taking place prior to the Effective
> Date *arising from or related in any way in whole or in part to the Debtors, the
> chapter 11 cases, the Disclosure Statement, this Plan or the solicitation of votes
> on this Plan* that [the Debtors or Black Diamond] would have been legally
> entitled to assert (whether individually or collectively) against any of the Released
> Parties . . . whether liquidated or unliquidated, fixed or contingent, matured or
> unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter
> arising, in law, equity or otherwise that are *based in whole or in part on any act,
> omission, transaction, event or other occurrence taking place before the
> Effective Date in any way relating to the Debtors, the Chapter 11 Trustee, the
> Chapter 11 cases, this Plan or the Disclosure Statement* against any of the
> Released Parties . . . .

Black Diamond Capital Management, L.L.C.'s Fourth Amended Joint Chapter 11 Plan for GSC

Group, Inc. And Its Affiliated Debtors ("Confirmed Plan") [ECF No. 1212-1] at §§ 10.5(a),

10.5(b) (emphasis added).

30.     Kaye Scholer is among the "Released Parties," which includes all "Professionals."

Confirmed Plan at 11.  The Court approved the releases when it approved the Confirmed Plan.

Findings of Fact, Conclusions of Law and Order Confirming Black Diamond Capital

Management, L.L.C.'s Fourth Amended Joint Chapter 11 Plan for GSC Group, Inc. and its

Affiliated Debtors ("Confirmation Order") [ECF No. 1212] at ¶¶ 28-29.[6]  Accordingly, the

Debtors and Black Diamond have released any claim for alleged breach of fiduciary duty against

Kaye Scholer arising from its role as counsel for the Debtors.  Black Diamond does not have any

right to assert that released claim.

**B.      Black Diamond Has Not Pleaded Any Conduct That Could Amount To A Breach Of Fiduciary Duty**

31.      Even assuming Black Diamond had not released the claim, it fails on the merits

because Black Diamond has not pleaded any conduct that constitutes a breach of fiduciary duty.

The basis for Black Diamond's supposed claim is Mr. Solow's declaration submitted on the date

this Court issued the Confirmation Order, but three weeks before that Order became final.

Supplemental Statement at ¶ 5.  According to Black Diamond, that declaration "describes Mr.

Solow's opinion of the quality of the work performed by Mr. Manzo and Capstone in the sale of

his client's assets, but never describes any consultation with Kaye Scholer's client prior to

preparing, executing and authorizing the filing of the Declaration and never discloses the

longstanding relationship between Mr. Solow and Mr. Manzo." *Id.*

32.      Black Diamond does not explain how Mr. Solow expressing his "opinion"

concerning the "quality of work performed by Mr. Manzo and Capstone" in these cases breached

---

[6]      None of the exceptions to the release apply.  Claims against Kaye Scholer for alleged
breach of fiduciary duty arising from its role as counsel for the Debtors are not expressly
preserved by the Confirmed Plan.  Black Diamond would not be able to prove that any
such claim "aris[es] from gross negligence, fraud or willful misconduct as determined by
final order of the Bankruptcy Court or any other court of competent jurisdiction."
Confirmation Order at §§ 10.5(a), 10.5(b).  In addition, such claims do not implicate
enforcement of the Confirmed Plan.

any duty of loyalty to the Debtors. No one has suggested that Mr. Solow did not honestly hold

that opinion. Indeed, Mr. Solow so testified at his deposition:

> Q.    Now, you ultimately agreed to file an affidavit. You agreed to file two
> declarations in support of Capstone's success fee; right?
>
> A.    That's correct.
>
> Q.    Why did you agree to do it?
>
> A.    GSC was a – in my experience a unique case for me and I believe unique
> case that warranted the kind of treatment that was being requested. It was unique
> because you had the way the case started, the grounds for the appointment of a
> trustee, the fact that the senior management of the debtor had signed contracts
> before the sale was approved with a buyer, one had been disclosed to us and we
> [dis]closed to the court as part of the bidding process but then additional
> agreements were reached that led to the motions by the non-controlling members
> of the senior lender group so there was no one left at the debtor who experienced
> the case. And the final reason was the results achieved by the professionals in the
> case from the start of a situation where senior – where the senior secured creditors
> would have actually received nothing with the bid that had been put in. The
> administrative fees would have eaten up the case. To a case where unsecured
> creditors are getting a substantial dividend, as I understand it.

Solow Dep. 199:11-200:19.

33.    In response to Black Diamond's question, Mr. Solow stated that "[i]t was possible

that the fact that we [Mr. Manzo and Mr. Solow] worked side by side in this case night and day

and the fact that we are friends also influenced my decision." *Id.* at 200:20-201:4. Mr. Solow's

testimony concerning that "possibility" hardly suggests that his "personal and professional

relationship with Mr. Manzo" caused him to "put that relationship ahead of the duty Kaye

Scholer owed to its client." Supplemental Statement at ¶ 5.

34.    Moreover, no one associated with the Debtors ever has expressed an opinion

contrary to the opinion expressed by Mr. Solow. In fact, prior to the appointment of the Chapter

11 Trustee, senior management of the Debtors executed a letter that described the "superb job"

that Capstone had "done in connection with our efforts to restructure GSC Group, Inc." ECF

No. 1146 at Ex. A.  That letter was submitted with Capstone's success fee motion on January 30,

2010.  The Chapter 11 Trustee ultimately entered into a settlement with Capstone in which

Capstone agreed to reduce the amount of the success fee, which this Court declined to approve.

ECF No. 1427.  In connection with those events, the Chapter 11 Trustee never expressed any

opinion contrary to Mr. Solow's regarding the quality of Capstone's work.

35.    Further, while Black Diamond states that "[t]he Declaration . . . never describes

any consultation with Kaye Scholer's client prior to preparing, executing and authorizing the

filing of the Declaration," and then conclusorily states that "[n]o such discussions took place"

(Supplemental Statement at ¶ 5), Black Diamond is wrong.  Capstone's counsel had informed the

Chapter 11 Trustee, his counsel, Shearman & Sterling, and the U.S. Trustee's counsel, Andrea

Schwartz, that Mr. Solow would be testifying in support of the success fee motion.  None of

them expressed any concern or objection.

36.    Finally, even if Mr. Solow had not submitted his declaration, Capstone could have

compelled his testimony at a hearing to consider the success fee motion at which he would have

testified to the matters expressed in his declaration.

### C.    Black Diamond Has Not Pleaded Any Recoverable Damages

37.    As Black Diamond concedes, a necessary element of a breach of fiduciary duty

claim is "damages resulting from the breach."  Supplemental Statement at ¶ 6 (citing *SCS*

*Commc'ns, Inc. v. Herrick Co., Inc.*, 360 F.3d 329, 342 (2d Cir. 2004); *In re Grumman Olson*

*Ind., Inc.*, 329 B.R. 411, 427 (Bankr. S.D.N.Y. 2005)).  Black Diamond has not asserted anything

in its Supplemental Statement that might satisfy the element of damages.

38.    Black Diamond contends that damages caused by the alleged breach of fiduciary

duty "include the Debtors' and Liquidating Trust's assets expended in matters related to

Capstone's efforts to seek a bonus and costs incurred by Black Diamond and the Liquidating

Trust in uncovering the breach of loyalty that could and should have been avoided had Kaye

Scholer told the truth at the outset and not attempted to mislead the Court and the parties into

accepting the false characterization of Kaye Scholer's and Capstone's prior dealings."

Supplemental Statement at ¶ 7.

39.    As an initial matter, any costs supposedly incurred by Black Diamond and the

Liquidating Trust cannot support Black Diamond's claim for alleged breach of a fiduciary duty

owed to the ***Debtors***.  Kaye Scholer did not owe any duty to Black Diamond and the Liquidating

Trust, which are not and were not Kaye Scholer's clients.

40.    Most significantly, assets supposedly expended by the Debtors in matters related

to Capstone's success fee motion did not result from Mr. Solow's submission of a supporting

declaration.  Those costs resulted from Capstone's filing the success fee motion and would have

been incurred regardless of whether Mr. Solow filed a supporting declaration.  Black Diamond

does not and cannot contend otherwise.

41.    Accordingly, Black Diamond's breach of fiduciary duty claim would not survive

a motion to dismiss for the independent reason that there are no damages resulting from the

alleged breach.

## IV.    ANY DAMAGES FOR ANY ALLEGED BREACH OF FIDUCIARY DUTY WOULD BE SUBSUMED WITHIN THE RELIEF PROVIDED BY THE SETTLEMENT AGREEMENT

42.    Even assuming that Black Diamond could overcome the impediments to its

asserting a breach of fiduciary duty claim and even assuming that such a claim could survive a

motion to dismiss, this Court should overrule Black Diamond's Limited Objection and approve

the Settlement Agreement and Kaye Scholer's Final Fee Application consistent with the

Settlement Agreement.

43.    As set forth above, Black Diamond's proposed breach of fiduciary duty claim is based on facts that plainly were a basis for the relief sought in the UST Motion.  Black Diamond has conceded that the monetary and non-monetary relief to which Kaye Scholer has agreed in the Settlement Agreement "fall[] within a reasonable settlement range when considered in light of the allegations set forth by the UST in its Motion to Vacate."  Limited Objection at ¶ 8; *see id.* at ¶¶ 1, 12.  There is no legitimate basis for Black Diamond to pursue a claim when it concedes that Kaye Scholer already has agreed to adequate compensation, which covers that claim.

## V.    THE COURT CAN GRANT THE SETTLEMENT APPROVAL MOTION

44.    The Court has identified several issues and concerns with the Settlement Approval Motion as originally submitted, including that the Motion, if granted, would bar the claims of third parties against Kaye Scholer arising from Kaye Scholer's conduct as counsel to the Debtors in these cases.  Kaye Scholer respectfully submits that the Court can grant the Settlement Approval Motion as originally submitted.

45.    It is a well-settled proposition of bankruptcy law that "[i]f a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action."  *St. Paul Fire & Marine Ins. Co. v. Pepsico, Inc.*, 884 F.2d 688, 701 (2d Cir. 1989).  The same reasoning applies to claims that "if proved, would have the effect of bringing the property of the third party into the debtor's estate, and thus would benefit all creditors."  *Id.*; *accord Pereira v. Cogan*, 00 Civ. 619 (RWS), 2001 WL 243537, at *11 (S.D.N.Y. May 8, 2001) ("where the injury is to all creditors as a class, it is the creditors who lack standing and the Trustee who may bring a claim based on that generalized injury").  A creditor seeking to assert an independent claim "must have suffered an injury *significantly different* from the injuries to creditors in general."  *Securities Investor Protection Corp. v.*

*Bernard L. Madoff Inv. Sec. LLC*, 477 B.R. 351, 356 (Bankr. S.D.N.Y. 2012) (emphasis in original).

46.     Here, the relief sought in the UST Motion based on allegations arising from Kaye Scholer's conduct as counsel to the Debtors would have benefitted all creditors in the same way. No party, including Black Diamond, incurred any injury significantly different from that allegedly incurred by the creditors in general.  Thus, none had any independent claim to assert. Any party that could assert those claims (which belonged to the Debtors and not to any other party independently) after the Effective Date of the Confirmation Plan necessarily had the power to settle them as long as the settlement was fair and reasonable.

47.     In that event, the ordinary rules of *res judicata* would apply.   "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or **could have been** raised in that action."  *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (emphasis added); *see San Remo Hotel, L.P. v. City and County of San Francisco, Cal.*, 545 U.S. 323, 336 n.16 (2005) (same).[7]  As this Court noted at the March 20 conference, "[t]he motion of the U.S. Trustee put into play all of the conduct of the subject professionals in the case" prior to the Effective Date.  Transcript (March 20, 2013) at 38.  All claims based on Kaye Scholer's conduct as counsel to the Debtors, including Black Diamond's purported breach of fiduciary duty claim, could have been asserted in the UST Motion and joinders.  Thus, the Court has the power to approve the Settlement Agreement and to bar all claims arising from Kaye Scholer's conduct as counsel to the Debtors in these cases.

---

[7]     "Settlement agreements are considered 'a final judgment on the merits,' and thus can support a finding of res judicata."  *In re Calise*, 354 Fed. Appx. 510, 512 (2d Cir. 2009); *see Juris v. Inamed Corp.*, 685 F.3d 1294, 1340 (11th Cir. 2012) ("For purposes of determining res judicata, an order approving a settlement agreement provides a final determination on the merits.").

48.      For example, in *In re Madoff*, 848 F. Supp. 2d 469, 476 (S.D.N.Y. 2012), the

district court affirmed the bankruptcy court's approval of a settlement between the Chapter 11

Trustee and a third party that, among other things, "barr[ed] claims against the . . . defendants by

third parties that are duplicative or derivative of the claims that were brought, or that could have

been brought, by [the Chapter 11 Trustee]."  As in these cases, the claims that the third parties

sought to pursue against the settling defendants were "'general one[s]' that [sought] to recover

for an injury that was inflicted not by specific acts of the . . . defendants directed toward the

Appellants themselves, and not by violating a duty owed directly to the Appellants, but by a

single set of actions that harmed [the debtor] and all [the debtor's] customers in the same way

and for the same reason."  *Id.* at 480.  As the court explained, under those circumstances, "a

bankruptcy court may enjoin actions that are derivative or duplicative of claims brought by the

trustee, or that could have been brought by the trustee in the first instance."  *Id.* at 488.

49.      Similarly, in *In re Medomak Canning*, 922 F.2d 895 (1st Cir. 1990), the Court

affirmed the dismissal of creditors' equitable subordination claims as barred by *res judicata*

where those claims previously had been compromised by the trustee in a bankruptcy court-

approved settlement.  The Court did so even though the creditors' "interests may in certain

respects be distinguished from and may perhaps even conflict with, those of the Trustee and the

other general creditors . . . ."  *Id.* at 902.  As the Court explained, the creditors "received a full

and fair opportunity to argue their special equities to the bankruptcy court in opposition to its

approval of the settlement, having received notice of hearing and an opportunity to object under

Bankruptcy Rule 9019" and to "present any unique equitable claims of their own in opposition to

the Compromise."  *Id.* at 902-03.  As a result, they were "barred from raising their own equitable

subordination claims in [a] later proceeding."  *Id.* at 903.

20

50.    Consistent with *Madoff* and *Medomak Canning*, this Court can approve the Settlement Agreement and bar Black Diamond from pursuing claims against Kaye Scholer arising from its role as counsel for the Debtors in these cases.  Black Diamond concedes that the "Settlement Agreement's terms . . . generally fall[] within a reasonable settlement range when considered in light of the allegations set forth by the UST in its Motion to Vacate."  Limited Objection at ¶ 8.  Those allegations necessarily include all the claims that could have been asserted based on the allegations in the UST Motion, which "put into play all of the conduct of the subject professionals" occurring prior to the Effective Date.[8]  Black Diamond was given multiple opportunities to assert any such claims.  For all the reasons stated above, Black Diamond cannot now assert any such claims.  And, no one else has objected to the Settlement Approval Motion.  Accordingly, the Court should grant the Settlement Approval Motion and enter the proposed order approving the Settlement Agreement, which bars Black Diamond from pursuing any further litigation against Kaye Scholer based on its conduct as counsel for the Debtors in the GSC Group Matter.

---

[8]    In *In re Richter*, 2010 WL 4272915 (Bankr. N.D. Iowa 2010), which Black Diamond cites, the court considered a motion to dismiss that had been joined by certain parties.  In that case, unlike the situation here, each party, including the joining parties, had an independent right to seek dismissal of the complaint.  Black Diamond has no right to any additional or independent recovery based on the allegations in the UST Motion.  The claims asserted in the UST Motion and the claims that Black Diamond seeks to preserve are the Debtors' claims.  Black Diamond's joinder, therefore, is irrelevant for purposes of the Court's consideration of the reasonableness of the Settlement Agreement.

## CONCLUSION

For the reasons set forth above, this Court should overrule Black Diamond's Limited

Objection, grant the Settlement Approval Motion and approve Kaye Scholer's Final Fee

Application consistent with the terms of the Settlement Agreement.

Dated: New York, New York
       April 15, 2013

                                **KAYE SCHOLER LLP**

                                By:*/s/ Aaron Rubinstein*
                                     Aaron Rubinstein
                                     Jeffrey A. Fuisz
                                     Angela R. Vicari
                                425 Park Avenue
                                New York, NY 10022
                                Tel:  (212) 836-8000
                                Fax:  (212) 836-8689
                                aaron.rubinstein@kayescholer.com
                                jeffrey.fuisz@kayescholer.com
                                angela.vicari@kayescholer.com

                                OTTERBOURG, STEINDER, HOUSTON &
                                ROSEN, P.C.
                                Scott L. Hazan
                                David M. Posner
                                230 Park Avenue
                                New York, NY 10169
                                Tel:  (212) 661-9100
                                Fax:  (212) 682-6104
                                shazan@oshr.com
                                dposner@oshr.com

                                *Attorneys for Kaye Scholer LLP*